**Frank A. SMITH, III,
Petitioner-Appellant,**

v.

**Louie WAINWRIGHT, et al.,
Respondents-Appellees.**

No. 81–5273.

United States Court of Appeals,
Eleventh Circuit.

Dec. 28, 1981.

Rehearing Denied Feb. 8, 1982.

Robert J. Buonauro, Orlando, Fla., for petitioner-appellant.

Evelyn D. Golden, Asst. Atty. Gen., Daytona Beach, Fla., for respondents-appellees.

Before FAY, ANDERSON and CLARK, Circuit Judges.

FAY, Circuit Judge:

The appellant, Frank A. Smith III, seeks to overturn his life sentence for second degree murder. Smith claims that his sentence was unlawfully imposed as a punishment for exercising his sixth amendment right to a jury trial. Our examination of the record indicates that Smith was not so penalized; we conclude, instead, that his life term was decreed only after a careful assessment by the trial judge of the relevant sentencing variables. Because we find no abuse of discretion in the sentencing process, we affirm.

## I. Procedural History

On March 11, 1974, an information was filed against the appellant, charging him with second degree murder. Following his conviction by a jury, Smith was sentenced to life imprisonment. Smith appealed his conviction to the Florida District Court of Appeal, Fourth District, which affirmed. *Smith v. State*, 314 So.2d 226 (Fla. 4th DCA 1975). The Supreme Court of Florida denied his subsequent petition for a writ of certiorari. *Smith v. State*, 345 So.2d 427 (Fla.1976).

On May 10, 1977, Smith moved for mitigation of sentence pursuant to Rule 3.800 of the Florida Rules of Criminal Procedure, alleging that he had been a model prisoner who posed no threat to society. The motion was filed, as statutorily required, within sixty days from the final affirmance.[1] A

---

1. Fla.R.Cr.P. 3.800 provides, in pertinent part:

(b) A court may reduce or modify to include any of the provisions of chapter 948, Florida

hearing on the motion, however, was not held until July 21, 1977, one hundred and one days after the appellate mandate. Following the hearing, trial Judge DeManio reduced Smith's sentence to a term of from two to six years.

The State of Florida appealed the reduction to the Fourth District Court of Appeal, which reinstated the life sentence. Since the trial judge's order of mitigation had been issued after expiration of the strict, sixty day jurisdictional time limitation, the Fourth District invalidated the reduction as void.

The appellant next moved to vacate the judgment pursuant to Fla.R.Cr.P. 3.850, alleging that his life sentence had been imposed to punish him for exercising his constitutional right to a jury trial. After an evidentiary hearing, the motion was denied. Smith's appeal of the denial was dismissed, since he had a contemporaneous appeal pending before the Supreme Court of Florida dealing with the same issues.

Smith later renewed in Circuit Court his motion to vacate the judgment and sentence which, after a hearing, once again was denied. On appeal to the District Court of Appeal, Fifth District, the denial was affirmed. *Smith v. State*, 382 So.2d 909 (Fla. 5th DCA 1980).

On June 24, 1980, Smith petitioned for a writ of habeas corpus to the United States District Court for the Middle District of Florida. His petition was dismissed by the district judge on January 27, 1981. From that dismissal, Smith brings his present appeal to this court.

## II. The Sentencing Process

■ While the severity of a sentence imposed within statutory bounds will not be reviewed by this court, *United States v.*

*Cavazos*, 530 F.2d 4 (5th Cir. 1976), alleged impropriety in the sentencing process itself is subject to judicial examination. *Herron v. United States*, 551 F.2d 62 (5th Cir. 1977); *United States v. Hartford*, 489 F.2d 652 (5th Cir. 1974).

■ Florida law provides for the imposition of a maximum sentence of life imprisonment for the commission of second degree murder. Fla.Stat. § 782.04. The appellant nevertheless contends that, had he pled guilty to this crime, he would have received a lighter sentence. Yet, even were this the case, his sentence would remain unassailable. Certainly, the Constitution forbids the exaction of a penalty for a defendant's unsuccessful choice to stand trial. *Baker v. United States*, 412 F.2d 1069 (5th Cir.), *cert. denied*, 396 U.S. 1018, 90 S.Ct. 583, 24 L.Ed.2d 509 (1970). It is well-established, however, that absent a demonstration of judicial vindictiveness or punitive action, a defendant may not complain simply because he received a heavier sentence after trial. *Blackmon v. Wainwright*, 608 F.2d 183 (5th Cir. 1980). Underlying this firmly entrenched tenet of our criminal justice system is the realization that the expression of remorse by one who acknowledges his violation of the law is often a significant first step towards his rehabilitation and, for that reason, deserving of a possible reward in the form of a lessened sentence. In upholding this policy, the Supreme Court of the United States has stated:

> [W]e cannot hold that it is unconstitutional for the State to extend a benefit to a defendant who in turn extends a substantial benefit to the State and who demonstrates by his plea that he is ready and willing to admit his crime and to enter

Statutes, a legal sentence imposed by it within sixty days after such imposition, or within sixty days after receipt by the court of a mandate issued by the appellate court upon affirmance of the judgment and/or sentence upon an original appeal, or within sixty days after receipt by the court of a certified copy of an order of the appellate court dismissing an original appeal from the judgment and/or sentence, or, if further appellate review is

sought in a higher court or in successively higher courts, then within sixty days after the highest state or federal court to which a timely appeal has been taken under authority of law, or in which a petition for certiorari has been timely filed under authority of law, has entered an order of affirmance or an order dismissing the appeal and/or denying certiorari.

the correctional system in a frame of mind that affords hope for success in rehabilitation over a shorter period of time than might otherwise be necessary.

A contrary holding would require the States and Federal Government to forbid guilty pleas altogether, to provide a single invariable penalty for each crime defined by the statutes, or to place the sentencing function in a separate authority having no knowledge of the manner in which the conviction in each case was obtained.

*Brady v. United States*, 397 U.S. 742, 753, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1969).

█ Thus, Smith's allegation of a possible discrepancy between his actual sentence and that which he would have received had he foregone trial to plead guilty does not invalidate the sentence. Indeed, any such discrepancy remains pure conjecture in the first instance, since there is no indication that any plea negotiations ever were attempted by either the prosecution or the court.

The appellant claims, in addition, that his sentence was tainted by the trial judge's impermissible intent to punish him for electing to go to trial rather than plead guilty. Smith bases his contention on two statements made by the trial judge on occasions subsequent to the original imposition of sentence. The first comment, which was made at a hearing on the appellant's motion for mitigation of sentence, was as follows:

I also know it is the custom among judges to sentence more harshly if you go to trial than if you plead. I am afraid that I have been probably a victim of that same sentencing process. It is not proper and not constitutional. And, I feel that had Mr. Smith entered a plea, discussed it with the Court, he would have been sentenced differently.

Record on Appeal at 36.

The second statement was made during an evidentiary hearing on the appellant's motion to vacate judgment and sentence. While on the witness stand, the trial judge, who by this time had left the bench and was engaged in the practice of law, was asked whether he had punished the appellant for having chosen to stand trial. In response, he remarked:

That is a little more strongly put than I would choose to put it, but, I think I have said it. I think, he suffered as a result of that attitude. I would hate to think that I went so far as to maliciously punish the man because I tried to employ the existing statute to his benefit, but, to that extent, yes, I think he received a heavier sentence for going to trial than he would have if he hadn't gone to trial, which I felt, subsequently felt was a constitutional infringement.

Record on Appeal at 38–39.

A careful reading of the above statements by Judge DeManio reveals their complete failure to support the appellant's claim of judicial vindictiveness. Rather than constituting an objective evaluation of his sentencing in light of existing legal standards, the judge's remarks reflect nothing more than a subjective assessment of what he believed the law *should* be: Judge DeManio expressed merely his personal view that the judicial tendency to decree heavier sentences for defendants who stand trial violates the Constitution. While such a belief may be shared by additional judges and legal theorists, to date it clearly has been rejected by that final arbiter of the meaning of the Constitution, the Supreme Court of the United States. *See Brady supra.* In a recent case touching on the issue, that tribunal stated:

The States and the Federal Government are free to abolish guilty pleas and plea bargaining; but absent such action, as the Constitution has been construed in our cases, it is not forbidden to extend a proper degree of leniency in return for guilty pleas... [W]ithholding the possibility of leniency from the latter [those who go to trial] cannot be equated with impermissible punishment as long as our cases sustaining plea bargaining remain undisturbed. Those cases, as we have said, unequivocally recognize the constitutional propriety of extending leniency in exchange for a plea of guilty and of

not extending leniency to those who have not demonstrated those attributes on which leniency is based.

*Corbitt v. New Jersey*, 439 U.S. 212, 223–224, 99 S.Ct. 492, 499–500, 58 L.Ed.2d 466 (1978).

If anything, Judge DeManio's admission that "I tried to employ the existing statute to his benefit," *supra*, indicates his adherence to governing legislative and constitutional requirements. Such adherence is further reflected in the judge's ordering of a pre-sentence investigation report which he took care to consider over a period of several months prior to imposing sentence. Indeed, the thoughtfulness and scrupulous sensitivity to the rights of the accused, evidenced by the judge's two statements quoted above, betray a judicial nature of the most conscientious sort, seemingly incapable of vindictive, punitive sentencing.

We note further that, when Judge DeManio uttered his remarks at the hearing on Smith's motion to vacate, he already had left the bench for private practice. Judge DeManio's perspective, therefore, necessarily had changed; no longer required to interpret existing law as a judge, he was able by this time to articulate his own ideals as an advocate. Having become involved in educational activities, as well, Judge DeManio based his assessment not on an examination of his own subjective motives in Smith's particular case but rather on the results of a statistical study of sentences imposed in fifty-four homicide cases over which he had presided during his years on the bench. He concluded that Smith's sentence did not "jive" with sentences imposed on people with similar backgrounds and in similar situations and, for that reason, was unjustifiably heavier. Record on Appeal at 21. The general nature of these comments by Judge DeManio, however, which were made long after Smith's initial sentencing, differs markedly from the remark of the trial judge immediately prior to sentencing the defendant in *Thomas v. United States*, 368 F.2d 941 (5th Cir. 1966), who, unlike his co-defendants, had pled not guilty and had gone to trial:

> If you will come clean and make a clean breast of this thing for once and for all, the Court will take that into account in the length of sentence to be imposed. If you persist, however, in your denial, as you did a moment ago, that you participated in this robbery, the Court also must take that into account. Now which will it be?

*Id.* at 944.

The coercion inherent in the above threatening admonition rendered unconstitutional Thomas's 25-year sentence for bank robbery. No such pressure ever was brought to bear upon Smith, whose life term was decreed without any reference whatsoever to his failure to plead guilty.

Similarly distinguishable is the situation in *United States v. Wiley*, 278 F.2d 500 (7th Cir. 1960), where the trial judge's refusal to grant a request by Wiley's counsel for preparation of a pre-sentence investigation report contributed to the court's ultimate invalidation of his three-year sentence for interstate theft. Such a glaring failure to consider pertinent individual sentencing variables is in stark contrast to the procedure followed by Judge DeManio, whose decree came only after calm and lengthy consideration of the pre-sentence investigation report.

In *Blackmon v. Wainwright*, 608 F.2d 183 (5th Cir. 1979), this court affirmed the denial of habeas relief to a state court prisoner who claimed that his receipt of a 101-year sentence for robbery represented a penalty for his having declined a plea bargain offer by the state judge. The fifth circuit found that "off the cuff" remarks regarding the possibility of a plea in exchange for a fifty-year sentence which were made by the trial judge in open court before looking at the defendant's record and only after persistent prodding by defense counsel, who had initiated all such discussions, did not amount to a plea bargain or offer. Weaker still than the challenge we rejected in *Blackmon* is the argument of Smith in the instant

situation, where no suggestion of a plea was ever proffered to the trial judge.

The federal district and Florida state judges who examined the sentencing procedure followed by Judge DeManio found it to comport fully with constitutional requirements. Our own careful consideration leads us to the same conclusion. Having found no evidence of unconstitutional motivation on the part of the sentencing judge, we hereby AFFIRM the district court's denial of the appellant's writ of habeas corpus.