**James Ernest HITCHCOCK,
Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT,
Respondent-Appellee.**

No. 83–3578.

United States Court of Appeals,
Eleventh Circuit.

Oct. 18, 1984.

Opinion on Granting Rehearing En
Banc Jan. 8, 1985.

**1334**

Richard B. Greene, Richard H. Burr, Public Defender of Florida, Craig Barnard, West Palm Beach, Fla., for petitioner-appellant.

Richard Prospect, Asst. Atty. Gen., Daytona Beach, Fla., for respondent-appellee.

Before RONEY and JOHNSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

RONEY, Circuit Judge:

James Ernest Hitchcock was convicted and sentenced to death for the strangulation of his brother's thirteen-year-old stepdaughter. After a direct appeal and post-conviction proceedings in the Florida state courts,[1] Hitchcock petitioned in federal district court for a writ of habeas corpus. The district court denied the writ without an evidentiary hearing. We affirm.

Petitioner Hitchcock raises numerous issues on this appeal: (1) whether Florida law discouraged his attorney from investigating and presenting nonstatutory miti-

gating factors; (2) whether the trial court considered petitioner's refusal to plead guilty in imposing the death sentence; (3) whether the evidence was sufficient to support his conviction; (4) whether the death penalty in Florida has been imposed in arbitrary and capricious manner either because of: (a) a defect in Florida's death penalty statute, Fla.Stat.Ann. § 921.141, (b) Florida law which required the jury be instructed on all lesser degrees of the charged offense whether or not there was evidence to support a conviction on the lesser degrees, or (c) racial discrimination; and (5) whether the *Brown* issue as decided in *Ford v. Strickland*, 696 F.2d 804 (11th Cir.) (en banc), *cert. denied,* — U.S. —, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983), should be reconsidered. We will address each issue in that order.

The facts of the case can be briefly summarized. Thirteen-year-old Cynthia Driggers was murdered by strangulation on July 31, 1976. Her body was recovered later that same day. An autopsy revealed that Driggers' hymen had been recently lacerated and that sperm was present in her vagina. Her face had cuts and bruises in the vicinity of the eyes. On August 4, 1976, petitioner confessed to the murder. He claimed that he and the victim had consensual sexual relations and he killed her when she became upset afterward and threatened to tell her parents. At trial, petitioner changed his story. He testified his brother Richard, the girl's stepfather, discovered Cynthia and him having intercourse and reacted by strangling the girl.

*Restriction of Mitigating Evidence*

Petitioner argues the district court should have held an evidentiary hearing on the question of whether he was denied a fair and individualized capital sentencing determination by the preclusion of nonstatutory mitigating factors as a result of either the operation of state law or the denial of effective assistance of counsel because

---

1. Petitioner's conviction and sentence were affirmed by the Florida Supreme Court in *Hitchcock v. State,* 413 So.2d 741 (Fla.), *cert. denied,* 459 U.S. 960, 103 S.Ct. 274, 74 L.Ed.2d 213 (1982). Petitioner's motion to vacate judgment and sentence was denied in state circuit court and the Florida Supreme Court affirmed. *Hitchcock v. State,* 432 So.2d 42 (Fla.1983).

of his counsel's belief that Florida law barred such evidence. After examining the law regarding admission of mitigating evidence as developed in both Florida and federal courts and reviewing the facts of this case, we conclude no constitutional infirmity exists in regard to petitioner's sentencing hearing.

Florida re-enacted its death penalty statute following *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), which in effect held all extant capital penalty statutes to be unconstitutional. The new statute contained a list of factors designed to guide discretion in the imposition of the death sentence. Both aggravating and mitigating factors were listed. The statute explicitly limited those circumstances that could be considered as aggravating. No such restrictive language, however, was used in conjunction with the mitigating circumstances. *See* Fla.Stat. § 921.141 (1972). This feature was noted by the Supreme Court in its opinion holding the statute to be constitutional. *Proffitt v. Florida,* 428 U.S. 242, 250 n. 8, 96 S.Ct. 2960, 2965 n. 8, 49 L.Ed.2d 913 (1976) ("There is no such limiting language introducing the list of statutory mitigating factors.").

The importance of a lack of restriction on the sentencer's consideration of mitigating circumstances in fixing the penalty for a capital crime was confirmed by the Supreme Court in *Lockett v. Ohio,* 438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978). The Court held unconstitutional an Ohio statute which limited mitigating evidence to a narrow set of factors. As to the distinction between the Ohio and the Florida statute, the Court made the following observation:

> Although the Florida statute approved in *Proffitt* contained a list of mitigating factors, six members of the Court assumed, in approving the statute, that the range of mitigating factors listed in the statute was not exclusive.... None of the statutes we sustained in *Gregg* [428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859] and the companion cases clearly operated at that time to prevent the sentencer

from considering any aspect of the defendant's character and record or any circumstances of his offense as an independently mitigating factor.

438 U.S. at 606–07, 98 S.Ct. at 2965–66.

Two years prior to *Lockett* and six days after the decision in *Proffitt,* the Florida Supreme Court in *Cooper v. State,* 336 So.2d 1133 (Fla.1976), *cert. denied,* 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977), used language which some contend should be interpreted as limiting the introduction of mitigating circumstances to those enumerated in the statute. The court upheld a trial court's refusal to admit testimony regarding a capital defendant's employment history as a mitigating circumstance. The defendant argued that his employment history demonstrated he was not beyond rehabilitation. Neither employment history nor potential for rehabilitation are statutory mitigating factors. *See* Fla. Stat.Ann. § 921.141(3). The court rejected the defendant's argument, reasoning that employment history was not particularly probative of a person's ability to conform to the law and that

> [i]n any event, the Legislature chose to list the mitigating circumstance, which it judged to be reliable for determining the appropriateness of a death penalty ... and we are not free to expand that list.

336 So.2d at 1139. In a footnote, the court emphasized the restrictive design of the Florida statute as regards to both aggravating and mitigating factors, stressing that the statute only would limit the arbitrariness condemned in *Furman* if discretion was limited "whether operating for or against the death penalty." 336 So.2d at 1139 n. 7. *See Perry v. State,* 395 So.2d 170, 174 (Fla.1980) (trial judge interpreted *Cooper* as barring non-statutory mitigating evidence).

Two years later and shortly after the decision in *Lockett,* the Florida Supreme Court in *Songer v. State,* 365 So.2d 696 (Fla.1978), *cert. denied,* 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979), clearly held the Florida death penalty statute does not restrict the mitigating evidence to the

factors enumerated in the statute. In denying a motion for rehearing which argued that the Florida statute as interpreted by *Cooper* violated *Lockett,* the Florida court said:

> In *Cooper,* this Court was concerned not with whether enumerated factors were being raised as mitigation, but with whether the evidence offered was probative. Chief Justice Burger, writing for the majority in *Lockett,* expressly stated that irrelevant evidence may be excluded from the sentencing process. 98 S.Ct. at 2965 n. 12. *Cooper* is not apropos to the problems addressed in *Lockett.*
>
> As concerns the exclusivity of the list of mitigating factors in Section 921.141, the wording itself, and the construction we have placed on that wording in a number of our decisions, indicate unequivocally that the list of mitigating factors is not exhaustive. This was noted, in fact, in *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).
>
> We have approved a trial court's consideration of circumstances in mitigation which are not included on the statutory list in *Washington v. State,* 362 So.2d 658 (Fla.1978); *Buckrem v. State,* 355 So.2d 111 (Fla.1978); *McCaskill v. State,* 344 So.2d 1276 (Fla.1977); *Chambers v. State,* 339 So.2d 204 (Fla.1976); *Meeks v. State,* 336 So.2d 1142 (Fla.1976); *Messer v. State,* 330 So.2d 137 (Fla.1976); and *Halliwell v. State,* 323 So.2d 557 (Fla. 1975), among others. Obviously, our construction of Section 921.141(6) has been that all relevant circumstances may be considered in mitigation, and that the factors listed in the statute merely indicate the principal factors to be considered.

365 So.2d at 700 (footnote omitted).

Prior to that decision, this Court had addressed the issue of whether Florida's death penalty statute as interpreted in *Cooper* violated *Lockett.* In *Spinkellink v. Wainwright,* 578 F.2d 582 (5th Cir.1978), *cert. denied,* 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979), we reviewed *Proffitt* and *Lockett* and stated "[t]he conclusion is inevitable that the [Supreme] Court continues to view Section 921.141 as constitutional.... Obviously, we are without power or authority to overrule the express finding of the Supreme Court." 578 F.2d at 621. Spinkellink was tried in 1973, prior to *Cooper.* Spinkellink presented and argued to the jury circumstances not fitting within the statutory mitigating categories.

Petitioner here was tried in January, 1977, which was after the Florida court's decision in *Cooper* but before the United States Supreme Court's decision in *Lockett.* Thus, petitioner argues that his counsel, misled by *Cooper* and without the clarification of *Lockett* and *Songer,* believed that he was limited to presenting evidence in mitigation that fit within one of the statutorily enumerated listings. In one context or another, this basic legal problem has been argued to this Court several times since *Spinkellink* but in no case has relief been granted because of *Cooper.*

In *Proffitt v. Wainwright,* 685 F.2d 1227 (11th Cir.1982), *cert. denied,* — U.S. —, 104 S.Ct. 508, 78 L.Ed.2d 697 (1983), it was argued that Proffitt's trial attorney was ineffective because he failed to present evidence of nonstatutory mitigating circumstances during the penalty phase of his trial in March, 1974. The Court indicated that at the time of Proffitt's trial which was prior to *Cooper,* it was reasonable to assume that evidence of nonstatutory mitigating circumstances was not admissible. 685 F.2d at 1248. In that case, however, the attorney testified that he believed that he could fit any mitigating evidence within the statutory mitigating factors and that, in any event, the defendant had instructed him not to introduce mitigating evidence. 685 F.2d at 1238–39.

In *Ford v. Strickland,* 696 F.2d 804 (11th Cir.) (en banc), *cert. denied,* — U.S. —, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983), it was argued that the jury instructions at the penalty phase of his trial restricted the jury from considering nonstatutory mitigating circumstances. Ford did not object to the instructions at trial or on direct

appeal. The Court denied relief because Ford had not been limited in the admission of mitigating evidence and thus could show no prejudice. 696 F.2d at 813.

A similar issue was involved in *Foster v. Strickland,* 707 F.2d 1339, 1346–47 (11th Cir.1983), and the Court again held that no prejudice was shown because the petitioner did not suggest any supported nonstatutory mitigating evidence in the habeas corpus proceeding.

█ In the instant case, the district court dismissed this claim on the grounds that Florida law did not limit what evidence could be produced in mitigation at the penalty stage and that the record indicated petitioner's attorney did not think he was constrained by the statute. Based on our prior precedents, the district court properly denied relief and an evidentiary hearing. The evidence proffered to the district court does not establish the right to constitutional relief. The record belies the argument that at the time of the case, the presentation to the jury would have been appreciably different had it not been for the possible confusion of petitioner's attorney as to the law on mitigating circumstances.

Petitioner submitted an affidavit of the attorney, a public defender, who represented him at trial and sentencing. The affidavit of the attorney is carefully written. It states that although the attorney does not have an independent recollection, he is of the opinion, upon reviewing the transcript, that during his representation of petitioner his perception was that consideration of mitigating circumstances was limited to the factors enumerated by the statute. It says he is aware of the current status of the case and that evidence of relevant mitigating circumstances was not investigated or presented in petitioner's sentencing trial. The affidavit does not indicate, however, that he would have done anything differently at that time. In *Proffitt,* this Court denied relief on a record where the defendant's attorney testified unequivocally that at the time of trial, he understood the Florida statute as limiting the mitigating evidence that could be introduced to that fall-

ing within the statutory mitigating circumstances. Although the attorney testified he believed he could fit any mitigating evidence within that scope, this Court stated that

> the defense attorney's belief that he could not, under the Florida statute, introduce evidence of mitigating factors not listed in Fla.Stat. § 921.141(6) was entirely reasonable. His decision not to call witnesses at the penalty stage to testify about appellant's general character and background was therefore justifiable and fully within the sixth amendment standard of reasonably effective assistance.

*Proffitt,* 685 F.2d at 1248.

At the sentencing hearing, petitioner's attorney called petitioner's brother, James, who testified about petitioner at the age of five or six, about his father's death, about the farm work of both the mother and the father hoeing and picking cotton in Arkansas, that there were seven children in the family, and that he left "Ernie" to babysit with the brother's small children. Other testimony relating to petitioner's character had come out at trial. Petitioner testified he left home when he was thirteen because he could not tolerate seeing his stepfather abuse his mother. His mother testified that he was a good child and he minded her. Three of his siblings told the jury he was not a violent person. During closing argument the attorney referred to much of the evidence not fitting squarely within the confines of the statutory mitigating circumstances including the difficult circumstances of petitioner's upbringing, the possibility of rehabilitation, and that petitioner voluntarily turned himself in. Finally, he admonished the jury to "look at the overall picture. You are to consider everything together ... consider the whole picture, the whole ball of wax."

Petitioner has suggested several different pieces of evidence of nonstatutory mitigating circumstances which might have been presented. First, he argues that testimony by psychologists could have been introduced which would have corroborated

lingering doubts about guilt and shown petitioner was an excellent candidate for rehabilitation. Such testimony would tend to establish his innocence, he says, by bringing out that he had coped with stressful situations throughout his life by retreating or escaping. There is no indication in this record, however, that the attorney at the time of sentencing would have followed this course even if he had known he could. Such matters are not judged from hindsight. *Strickland v. Washington*, —— U.S. ——, ——, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 694 (1984). It should be noted that mental and emotional conditions are statutorily permitted mitigating considerations. Fla.Stat.Ann. § 921.141(4)(b). Petitioner has cited us no cases holding that the mere failure to investigate or produce psychological or psychiatric evidence renders a sentencing proceeding unconstitutional.

Petitioner argues that greater details as to his upbringing in an environment of extreme poverty, his solid character traits, devotion to hard work, willingness to contribute to the family's support, and respect for adults should have been presented as evidence of nonstatutory mitigating factors. All of this was developed, however, to some extent for the jury. As described above, elements of petitioner's character and other background information were testified to by petitioner's brother, sisters, and mother as well as by petitioner himself. Petitioner's trial counsel reminded the jury of these facts during closing argument in the penalty phase.

It thus appears that petitioner was not denied an individualized sentencing hearing.

### Life Sentence Offered for Guilty Plea—Death Sentence Imposed After Conviction

Petitioner asserts that the state trial judge imposed the death sentence as punishment for petitioner's decision to go to trial rather than plead guilty. Petitioner alleged that the prosecutor and the judge together offered him a plea bargain which would exchange his plea of guilty for a life sentence. Petitioner declined the offer. After trial, the judge on the jury's recommendation sentenced petitioner to death. Petitioner argues his death sentence must be overturned because the trial judge's sentencing order did not explain why death became an appropriate penalty after trial.

The record is unclear as to whether the trial judge indicated he would approve a life sentence on guilty plea, or merely would consider it.[2] We treat the case as if the defendant would have received a life sentence on a guilty plea.

Although the principle petitioner argues would apply on a retrial and a resentencing after a successful appeal, *North Carolina v. Pearce*, 395 U.S. 711, 726, 89 S.Ct. 2072, 2081, 23 L.Ed.2d 656 (1969); *Blackledge v. Perry*, 417 U.S. 21, 28–29, 94 S.Ct. 2098, 2102–2103, 40 L.Ed.2d 628 (1974), it does not apply to the failure of a plea bargain. *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). In the "give-and-take" of plea bargaining, the state may extend leniency to a defendant who pleads guilty foregoing his right to jury trial. *Brady v. United States*, 397 U.S. 742, 753, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970). Legislative schemes which extend the possibility of leniency to defendants who plead guilty are permissible so long as the statute does not unnecessarily burden the assertion of constitutional rights or act to coerce inaccurate guilty pleas. *Compare United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) (statute invalid when defendant could only receive death sentence if he went to trial) *with Corbitt v.*

---

**2.** MR. TABSCOTT [defense counsel]: I would also remind the Court that prior to trial, the Court did argue to a plea of nolo contendere giving the defendant a life sentence on that plea. I have nothing further.

THE COURT: I think the record ought to show that the matters we discussed, there was never any understanding, because your client didn't want to consider any plea.

MR. TABSCOTT: That plea was offered to him by the State and the Court, however. And, it is true he declined to enter that plea.

THE COURT: Any other matters?

MR. TABSCOTT: No, sir.

*New Jersey,* 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978) (statute valid when plea of *non vult* gave possibility of sentence of not more than 30 years but conviction at trial carried mandatory life sentence). A judge, as with the prosecutor and the legislature, should not be precluded from approving leniency in sentencing upon an admission of guilt. *Cf. Corbitt,* 439 U.S. at 224 n. 14, 99 S.Ct. at 500 n. 14 (cannot permit prosecutor to offer leniency but not legislature).

Sentencing after conviction following a failed plea bargain presents a different situation from sentencing after a prior sentence and retrial. Upon a second conviction, a defendant stands in the same posture for sentencing that he did after his first conviction. Presumably all facts have been before the court for determination of the correct sentence. Unless the court cites circumstances which occurred after his original sentence, a greater sentence would appear to be for no reason other than a penalty for the defendant's challenging of his conviction. *See Wasman v. United States,* —— U.S. ——, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984). A defendant who pleads guilty, however, is in a markedly different posture than a defendant who is convicted at trial. Only after trial and a sentencing hearing has the trial court learned all of the facts which might be considered for sentencing. On a plea bargain, the defendant's and prosecutor's agreement forecloses the necessity for such a detailed explanation. Moreover, by pleading guilty a defendant confers a "substantial benefit to the state:"

> the more promptly imposed punishment after an admission of guilt may more effectively attain the objectives of punishment; and with the avoidance of trial, scarce judicial and prosecutorial resources are conserved for those cases in which there is a substantial issue of the defendant's guilt or in which there is substantial doubt that the State can sustain its burden of proof.

*Brady v. United States,* 397 U.S. at 752, 90 S.Ct. at 1471. The state is entitled to extend a sentence of less than that which might otherwise be appropriate to a defendant that confers such a benefit on it. 397 U.S. at 753, 90 S.Ct. at 1471. The heart of a plea bargain from a defendant's point of view is the option of avoiding a possibly harsher sentence upon conviction at trial.

There is no merit to the argument that the sentencing judge should have set forth the reasons why the sentence after trial was greater than what would have been approved on a guilty plea. Absent a demonstration by the defendant of judicial vindictiveness or punitive action, a defendant may not complain simply because he received a heavier sentence after trial. *Blackmon v. Wainwright,* 608 F.2d 183 (5th Cir.1979), *cert. denied,* 449 U.S. 852, 101 S.Ct. 143, 66 L.Ed.2d 64 (1980). We have held that a mere allegation of discrepancy between a defendant's actual sentence and that which he would have received had he foregone trial to plead guilty does not invalidate the sentence. *Smith v. Wainwright,* 664 F.2d 1194, 1197 (11th Cir.1981).

That the death penalty is involved in this case does not alter the principle of law. Given the different situations presented by a defendant who pleads guilty and a defendant convicted after trial, the possibility of different sentences depending on whether or not the defendant pleads guilty does not run afoul of the requirement that the "decision to impose the death sentence be, and appear to be, based on reason...." *Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977). In this case, the court imposed the death penalty only after fully considering the aggravating and mitigating circumstances and receiving the jury's recommendation of death. The procedure in Florida fully meets the Ninth Circuit's requirements that if a court participates in plea bargaining "the record must show that the court sentenced the defendant solely upon the facts of his case and his personal history, and not as punishment for his refusal to plead guilty." *United States v. Stockwell,* 472 F.2d 1186, 1187–88 (9th Cir.) *cert. de-*

*nied,* 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973).

■ A trial court which approved a sentence based on a plea bargain prior to trial need not, upon rejection of that offer and conviction at trial, restrict its sentence to that offered for the plea bargain, set forth reasons for harsher sentence, nor impose such sentence only for conduct occurring after the aborted plea bargaining.

### Sufficiency of the Evidence

In petitioner's guilt-innocence trial, the jury was instructed that it could find petitioner guilty of first degree murder upon alternative theories: premeditated murder or felony murder. The jury returned a general verdict of guilty of first degree murder.

■ Petitioner argues that the prosecution failed to prove felony-murder because the facts did not show that the felony of sexual battery had occurred but that the evidence supported his claim that the victim consented to sexual relations. He contends that since it cannot be determined on which theory the jury based its verdict, the conviction must be reversed. The issue turns on whether there was sufficient evidence to support the felony murder theory without running afoul of *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).

"[A] general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient...." *Zant v. Stephens,* 462 U.S. 862, ——, 103 S.Ct. 2733, 2745, 77 L.Ed.2d 235, 252 (1983); *Stromberg v. California,* 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931). The test for sufficiency of the evidence on habeas corpus is whether viewing the evidence in the light most favorable to the Government "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979); *Cosby v. Jones,* 682 F.2d 1373, 1379 (11th Cir.1982). A defend-

ant cannot be sentenced to death for participating in a felony with no intent to participate in a murder. *Enmund,* 458 U.S. at 801, 102 S.Ct. at 3378. Where the defendant himself participates in both the felony and the intentional killing, that principle does not apply. *Adams v. Wainwright,* 709 F.2d 1443, 1447 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984).

■ The evidence at trial showed that petitioner was temporarily staying at his brother's house. On the night in question, he returned to the house at a late hour and entered through a window. Petitioner admitted having sexual relations with his brother's thirteen-year-old stepdaughter. The young girl complained he had hurt her and that she was going to tell her parents. A medical examination revealed the girl was previously of chaste character. This evidence was sufficient to prove that petitioner committed sexual battery by force. The evidence was sufficient to show that the homicide occurred intentionally, not accidentally in the course of an unrelated felony.

### Arbitrariness of Death Penalty in Florida

■ Petitioner raises three different arguments in support of the contention that the imposition of the death penalty in Florida violates the Eighth and Fourteenth Amendments. First, petitioner asserts that at the time of his trial the commission of rape in conjunction with the capital felony was listed as a statutory aggravating factor although the Florida legislature had replaced the crime of rape with the crime of sexual battery.

One of the aggravating factors in Florida's post-*Furman* death penalty statute was: "[t]he capital felony was committed while defendant was engaged ... in the commission of ... rape ...." Fla.Stat. § 921.141 (1972). In 1974, the Florida legislature rewrote the rape statute. 1974 Fla.Laws ch. 74–121 § 1. The legislature created the new crime of sexual battery which was broader than the repealed statutory crime of rape. *See* Fla.Stat.Ann.

§ 794.011. In 1976, the Florida Supreme Court dropped all reference to rape as an aggravating factor when it repromulgated its standard jury instructions. *Florida Standard Jury Instructions in Criminal Cases* at 77–82 (1976). The death penalty statute has now been amended to include the term sexual battery. 1983 Fla.Laws ch. 83–216 § 177.

There is no merit to petitioner's contention that at the time of petitioner's trial the law had become so unclear that it was likely to be applied in an arbitrary and capricious manner. The jury instructions at petitioner's guilt-innocence trial described the felony of sexual battery which is equivalent to the traditional crime of rape.[3] In charging the jury during the penalty phase, the court again used the term sexual battery instead of rape. The statutory aggravating factor mentioning rape thus was not applied in an arbitrary manner in petitioner's case. Contrary to petitioner's assertion, the legislature's recataloguing of rape as sexual battery in the statute books did not make the statutory aggravating factor referred to as rape so vague as to be susceptible of arbitrary or capricious application. *See Hitchcock v. State*, 413 So.2d 741, 747–48 (Fla.), *cert. denied*, 459 U.S. 960, 103 S.Ct. 274, 74 L.Ed.2d 213 (1982).

■ Second, petitioner argues that at the time of this trial Florida required instructions on all lesser degrees of the charged offense even when there was no evidence to support these lesser offenses, thus rendering the system arbitrary and capricious. Petitioner waived any right to complain about the instructions as to lesser degree offenses in this case because the instructions given are the ones he requested. He waived any right to object to Florida's law on instructing on lesser degrees in other cases by his failure to object at trial or on direct appeal. *Ford v. Strickland*, 696 F.2d at 816–17. No "cause" for this failure to object can be shown because one of the major cases which forms the basis of petitioner's argument, *Roberts v. Louisiana*, 428 U.S. 325, 334–35, 96 S.Ct. 3001, 3006–07, 49 L.Ed.2d 974 (1976), was decided the year before his trial. *See Reed v. Ross*, —— U.S. ——, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984).

■ In any event, the argument that Florida's system is unconstitutional because in some cases lesser degrees of the charged crime are instructed without factual support is without merit. At the time this case was tried, there was a difference in the treatment of lesser degrees of a charged crime and lesser included offense. Florida law has always prohibited instructions on lesser-included offenses unless the lesser-included offense is necessarily included in the charged offense or there is evidence to support a conviction on the lesser-included offense. *Gilford v. State*, 313 So.2d 729, 732–33 (Fla.1975); *Brown v. State*, 206 So.2d 377, 384 (Fla.1968); *see* Fla.Stat. § 919.14 (1969) (replaced by Fla.R. Crim.P. 3.490, Fla.Rules of Court). If the defense requested, however, the court at that time had to instruct on all lesser degrees of a charged offense whether or not the evidence supported those lesser degrees. *Gilford*, 313 So.2d at 733. This was true even though "[i]n many cases the elements of the lesser degrees are totally distinct from the offense charged." *Brown*, 206 So.2d at 381. In 1981, the Florida Supreme Court amended the procedural rule which mandated this result. *In re Florida Rules of Criminal Procedure*, 403 So.2d 979 (Fla.1981). The rule now

---

**3.** The judge charged the jury that:

It is a crime to commit sexual battery upon a person over the age of 11 years, without that person's consent, and in the process use or threaten to use a deadly weapon, or use actual physical force likely to cause serious physical injury.

Sexual battery means oral, and, or vaginal penetration by, or union with, the sexual organ of another....

This language tracks the current sexual battery statute. Fla.Stat.Ann. § 794.011(h)(3). Now repealed Fla.Stat. 794.01 read as follows:

(2) whoever ravishes or carnally knows a person of the age of eleven years or more, by force and against his or her will ... shall be guilty of a life felony....

requires that the trial court charge only on those lesser degrees supported by the evidence. Fla.R.Crim.P. 3.490.

Although Florida's former practice of charging on all lesser degrees may have introduced some "distortion into the fact-finding process" by allowing for jury pardon, *see Spaziano v. Florida,* — U.S. —, —, 104 S.Ct. 3154, 3160, 82 L.Ed.2d 340 (1984); *Hopper v. Evans,* 456 U.S. 605, 611, 102 S.Ct. 2049, 2052, 72 L.Ed.2d 367 (1982), no Eighth Amendment problem was created. Florida juries were not faced with a choice of convicting on a lesser offense not supported by the evidence in order to avoid imposing the death penalty. It was this combination of a mandatory death sentence for murder and the required charging on lesser offenses that the Supreme Court condemned in *Roberts v. Louisiana,* 428 U.S. at 334–35, 96 S.Ct. at 3006–07, as leading to arbitrary results violative of the Eighth Amendment.

Third, petitioner's claim that the death penalty is applied in a racially discriminatory manner in Florida depends on the same statistical study rejected by this Court in *Sullivan v. Wainwright,* 721 F.2d 316, 317 (11th Cir.), *aff'd,* — U.S. —, 104 S.Ct. 450, 78 L.Ed.2d 210 (1983); *see Spinkellink v. Wainwright,* 578 F.2d 582, 612–616 (5th Cir.1978), *cert. denied,* 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979). The Supreme Court has held this argument to be without merit. *Wainwright v. Ford,* — U.S. —, 104 S.Ct. 3498, — L.Ed.2d — (1984); *see Sullivan v. Wainwright,* — U.S. —, — - — & n. 3, 104 S.Ct. 450, 451–52 & n. 3, 78 L.Ed.2d 210, 212–13 & n. 3.

### Brown Issue

Petitioner raises the so-called *Brown* issue decided in *Ford v. Strickland,* 696 F.2d 804 (11th Cir.) (en banc), *cert. denied,* — U.S. —, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983), and suggests we reconsider our decision based on an argument mentioned in a concurring opinion in *Ford.* The *Brown* issue involved a claim by 123 death row inmates, including petitioner, that the Flori-

da Supreme Court had examined nonrecord information during its appellate review of their sentences. This Court, sitting *en banc,* held that no constitutional violation had occurred. *Ford v. Strickland,* 696 F.2d at 811. This panel is bound by that decision.

AFFIRMED.

JOHNSON, Circuit Judge, dissenting:

I dissent from the majority's disposition of this case on two issues: (1) petitioner's claim that he was denied an individualized sentencing hearing as required by the Eighth and Fourteenth Amendments to the Constitution and recognized in *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and (2) petitioner's claim that the trial court's imposition of the death sentence after his rejection of a proffered guilty plea by the court violated his rights as guaranteed by the Eighth Amendment and the Fourteenth Amendment's Due Process Clause. Since I would hold that petitioner has clearly stated a claim on which relief may be granted on both of these grounds and that proof of these claims depends in part on facts outside the record before us, I would remand this case to the district court for an evidentiary hearing as to both claims. *Blackledge v. Allison,* 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

Petitioner's sentencing hearing was held on February 4, 1977. At that time, the post-*Furman* 1972 Florida capital sentencing statute governing the sentencer's consideration of mitigating factors, Fla.Stat. Ann. § 921.141(2) and (6), had been interpreted in *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), and *Cooper v. State,* 336 So.2d 1133 (Fla.1976). In *Proffitt v. Florida,* the Supreme Court in considering the constitutionality of Florida's capital sentencing scheme as a whole noted that, unlike the statute's limitation of the sentencer's consideration of aggravating factors to those listed in the statute, "[t]here is no such limiting language introducing the list of statutory mitigating factors." 428 U.S. at 250 n. 8, 96 S.Ct. at 2965

n. 8. Or, as the Court later stated in *Lockett v. Ohio:*

> In *Proffitt v. Florida*, six Members of this Court assumed, in approving the statute, that the range of mitigating factors listed in the statute was not exclusive.... None of the statutes we sustained in *Gregg* [428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859] and the companion cases clearly operated at that time to prevent the sentencer from considering any aspect of the defendant's character and record or any circumstances of his offense as an independently mitigating factor.

438 U.S. at 606, 607, 98 S.Ct. at 2965, 2966. Six days after the decision in *Proffitt v. Florida, Cooper v. State* was decided by the Florida Supreme Court. In *Cooper*, the Florida Supreme Court apparently held, in language quoted in full below,[1] that Section 921.141 did limit the sentencer's consideration of mitigating factors to those listed in the statute. Later cases binding on this Court have so interpreted *Cooper*. *Ford v. Strickland*, 696 F.2d 804, 812 (11th Cir.1983) (en banc) ("Ford contends he cannot be faulted for failing to raise the issue ... because Florida Supreme Court decisions decided prior to trial indicated only statutory mitigating circumstances could

be considered. The court ruled explicitly to this effect two years after trial in *Cooper v. State* .... *Lockett v. Ohio*, ... a direct reversal of this view, was not decided until two years later ...."); *Foster v. Strickland*, 707 F.2d 1339, 1346 (11th Cir.1983); *Proffitt v. Wainwright*, 685 F.2d 1227, 1238 and n. 18 (11th Cir.1982). *Cooper* was the controlling decision of Florida law in effect at the time of petitioner's sentencing trial.

Two years after the decision in *Cooper* and one year after petitioner's sentencing trial, *Lockett v. Ohio, supra*, was decided. In *Lockett*, the Supreme Court held that the limitation of a sentencer's consideration to an exclusive statutory list of mitigating factors violated the Eighth and Fourteenth Amendments. Two months later, in *Songer v. State*, 365 So.2d 696 (Fla.1978) (on rehearing), the Florida Supreme Court rejected a *Lockett* challenge to the statute based on *Cooper*. The court found that the *Cooper* language concerning the exclusivity of statutory mitigating factors was dicta and that *"Cooper* is not apropos to the problems addressed in *Lockett." Id.* at 700. The court held that its construction of Section 921.141(6) since enactment had been that "all relevant circumstances may

---

1. We held in *State v. Dixon* [283 So.2d 1 (Fla.1973)] that the rules of evidence are to be relaxed in the sentencing hearing, but that evidence bearing no relevance to the issues was to be excluded. *The sole issue in a sentencing hearing under Section 921.141, Florida Statutes (1975), is to examine in each case the itemized aggravating and mitigating circumstances. Evidence concerning other matters have no place in that proceeding any more than purely speculative matters calculated to influence a sentence through emotional appeal.* Such evidence threatens the proceeding with the undisciplined discretion condemned in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).[7]

  .     .     .     .     .

  As to proffered testimony concerning Cooper's prior employment, it is argued that this evidence would tend to show that Cooper was not beyond rehabilitation. Obviously, an ability to perform gainful work is generally a prerequisite to the reformation of a criminal life, but an equally valid fact of life is that employment is not a guarantee that one will be law-abiding. Cooper has shown that by his

conduct here. *In any event, the Legislature chose to list the mitigating circumstances which it judged to be reliable for determining the appropriateness of a death penalty for "the most aggravated and unmitigated of serious crimes," and we are not free to expand the list.*
  [7] The legislative intent to avoid condemned arbitrariness pervades the statute. Section 921.141(2) requires the jury to render its advisory sentence "upon the following matters: (a) Whether sufficient aggravating circumstances exist *as enumerated in subsection (6);* (b) Whether sufficient mitigating circumstances exist *as enumerated in subsection (7),* which outweigh the aggravating circumstances found to exist ...." (emphasis added). This limitation is repeated in Section 921.141(3), governing the trial court's decision on the penalty. Both sections 921.141(6) and 921.141(7) begin with words of mandatory limitation. This may appear to be narrowly harsh, but under *Furman undisciplined* discretion is abhorrent whether operating for or against the death penalty.
  336 So.2d at 1139 (emphasis added) (footnotes omitted).

be considered in mitigation, and that the factors listed in the statute merely indicate the principal factors to be considered." *Id.*

In light of this history, I agree with the majority that at the time of petitioner's sentencing trial, after *Cooper* but before the clarification in *Songer,* the statute was, at best, ambiguous: capable of both a constitutional construction in accordance with *Lockett* as not limiting the sentencer's consideration to statutory mitigating factors, as in *Proffitt v. Florida,* and an unconstitutional construction that the statutory list of mitigating factors was exclusive, as in *Cooper. See Proffitt v. Wainwright, supra,* at 1238 and nn. 18, 19. Stated differently, as the petitioner argues, at the time of his sentencing trial, the statute was unconstitutional due to its ambiguity.[2]

As with all but certain First Amendment attacks based on a statute's ambiguity, however, petitioner must also demonstrate that the unconstitutional interpretation of the statute was actually followed at his sentencing trial; that, in short, the statute was unconstitutional as applied to him. To meet this element of stating a claim on which relief may be granted, petitioner alleges that the unconstitutional *Cooper* interpretation of the statute affected his sentencing proceedings because his counsel reasonably relied on *Cooper* as the controlling statement of Florida law in his preparation and presentation at the sentencing trial. Unlike the majority, I cannot conclude based on this record that petitioner's allegations in support of his claim "conclusively show that the [petitioner is] entitled to no relief," or that these allegations are so "palpably incredible ... so patently frivolous or false" that summary dismissal is warranted. *Blackledge v. Allison, supra,* 431 U.S., at 73, 76, 97 S.Ct. at 1628, 1630.

To the contrary, the lack of any evidentiary hearing in the state or district courts to develop a record by which we can evaluate this claim and the proffer of evidence supporting this claim by the petitioner in the district court demonstrate that the petitioner is entitled to an evidentiary hearing on the issue of whether the unconstitutional construction of the statute actually affected the course of his sentencing proceeding.

In support of his motion for an evidentiary hearing in the district court, petitioner alleged that his trial counsel, Tabscott, would testify that at the time he represented petitioner at the sentencing trial he believed that *Cooper* limited the sentencer's consideration to statutory mitigating factors, and that Tabscott would testify that he "focused upon the statutory mitigating circumstances in his pre-trial investigation and preparation as well as in his presentation of evidence and argument at trial." Petitioner proffered an affidavit by Tabscott in support of these allegations. In this affidavit, Tabscott states that "during my representation of Mr. Hitchcock, my perception was that the consideration of mitigating circumstances was limited to the factors enumerated in the statute."

Petitioner further alleged, and proffered evidence in support of his allegations, that significant evidence of nonstatutory mitigating factors could have been presented at his sentencing hearing "had Mr. Tabscott believed that the law permitted the presentation of such evidence." Petitioner proffered the testimony and report of a psychologist who had examined him as establishing the nonstatutory mitigating factors that his behavior in committing the crime was inconsistent with his established patterns of behavior and that he had great

---

**2.** The majority misreads the *Cooper/Lockett* claims made by the petitioner. As both the briefs and the oral argument make clear, petitioner first claims that due to its ambiguity the statute was unconstitutional as applied to him and further that the unconstitutional interpretation of the statute deprived him of effective assistance of counsel by operation of state law. Petitioner then argues only in the alternative

that if it was clear that the statute permitted the introduction of nonstatutory mitigating factors, his counsel was ineffective in failing to investigate and present such evidence. I address only the first of petitioner's claims, that the statute was unconstitutional as applied to him, and do not, as does the majority, read petitioner's argument simply as an ineffective assistance of counsel claim.

potential for rehabilitation.[3] Petitioner also proffered testimony and affidavits of various family members attesting his difficult childhood and his good character.

The record of petitioner's sentencing hearing does not contradict the affidavit of petitioner's counsel that he believed only statutory mitigating factors could be presented at his hearing. Nor does the record reveal that substantial nonstatutory mitigating evidence was in fact presented. Only one witness, the petitioner's brother, testified at the sentencing hearing as to circumstances that could arguably be identified as nonstatutory mitigating factors: the petitioner's father had died of cancer, petitioner's mother worked on a farm, and the witness had allowed petitioner to babysit his children. Further testimony from this witness that petitioner's habit of "sucking on" automotive gasoline seemed to affect him mentally was argued by counsel as a statutory psychological mitigating factor. The bulk of the argument by petitioner's counsel was an evaluation of whether the statutory mitigating factors did or did not apply in this case. Petitioner's counsel reminded the sentencing jury of earlier testimony concerning petitioner's background, but he did not argue this testimony as a mitigating factor, asking only that the jury consider it "for whatever purposes you may deem appropriate." In short, the slender evidence from the state sentencing hearing record that some mitigating factors not listed in the statute were, to a limited extent, before the sentencing jury does not conclusively establish that petitioner's counsel in fact believed that such evidence could be, and was, presented and fully argued to the jury as nonstatutory mitigating factors.

Nor does the precedent of this Court indicate that petitioner's proffer was insufficient to entitle him to an evidentiary hearing. *Proffitt v. Wainwright, supra,* rejected a claim of ineffective assistance of counsel based on an attorney's affidavit that he had relied on an interpretation of Florida law that precluded the presentation of nonstatutory mitigating factors:

> [T]he defense attorney's belief that he could not, under the Florida statute, introduce evidence of mitigating factors not listed in Fla.Stat. § 921.141(6) was entirely reasonable. His decision not to call witnesses at the penalty stage to testify about appellant's general character and background was therefore justifiable and fully within the sixth amendment standard of reasonably effective assistance.

685 F.2d at 1248. The petitioner in this case, unlike the petitioner in *Proffitt,* challenges the Florida statute as applied to him. As a necessary step in his argument that the statute was ambiguous and that the unconstitutional interpretation of the statute governed his sentencing hearing through his attorney's reliance on *Cooper,* petitioner claims that his attorney reasonably relied on *Cooper. Proffitt,* then, in fact supports petitioner's attack on the statute. In *Ford v. Strickland, supra,* this Court held that the jury instructions given at the defendant's sentencing hearing did not result in the jury's perceiving that it was limited only to the consideration of statutory mitigating factors because both the trial court and counsel did not so perceive the law. In *Foster v. Strickland, supra,* the Court held that no prejudice had been shown from the defendant's failure to object to similar jury instructions because the defendant did not proffer any nonstatutory mitigating evidence to support his claim. Neither *Ford* nor *Foster* speaks to the present case in which the petitioner has proffered both evidence that his counsel perceived Florida law to limit the presentation of mitigating evidence to those factors listed in the statute and evidence that substantial nonstatutory mitigating evidence was available.

---

**3.** Contrary to the majority's suggestion, this evidence, although produced through a psychologist's evaluation, does not also fall within the statutory mitigating factor that "the capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance." Fla.Stat.Ann. § 921.141(4)(b).

In sum, I would hold the evidence proffered by the petitioner to the district court sufficient to entitle him to an evidentiary hearing on his allegations that, but for his counsel's reasonable reliance on the Florida Supreme Court's interpretation of the statute as precluding the introduction of non-statutory mitigating evidence, such evidence would have been investigated and presented at his sentencing hearing. Although the inference is clear from the affidavit and petitioner's allegations, I recognize that the proffered affidavit does not explicitly state this causal relationship between counsel's reliance on *Cooper* and the course of his sentencing hearing. This does not, however, as the majority seems to assume, require a summary dismissal of petitioner's claims, but rather it is in both law and logic further demonstration of the need for an evidentiary hearing in this case. We cannot conclusively determine from the evidence before us whether petitioner's allegations of this causal relationship are indeed fact. If, as petitioner alleges, his counsel's reliance on *Cooper* as limiting the sentencer's consideration to statutory mitigating factors precluded counsel from investigating or presenting available evidence of nonstatutory mitigating factors, then petitioner has demonstrated that the unconstitutional interpretation of the ambiguous statute did affect his sentencing hearing, and relief should be granted.

I would further hold that petitioner has stated a claim of constitutional deprivation through his allegations that, prior to trial, the trial court approved of the prosecution's offer of a plea agreement of life imprisonment, and thus the trial court at least implicitly agreed to impose life imprisonment as a sentence if petitioner were to accept this offer, and after trial the court sentenced petitioner to death without making written findings as to why before trial a life sentence was proper and after trial the death sentence was imposed.

*Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), relied on by both the majority and the district court, does not apply to the present case. *Bordenkircher* involved the limited factual situation where a state prosecutor carried out a threat to re-indict the defendant on a more serious charge if the defendant did not plead guilty. *Bordenkircher* did not involve either the court's participation in the plea bargaining process or the possible sentence of the death penalty. Both of these factors, present in this case, distinguish the proper analysis from that in *Bordenkircher* and demonstrate that petitioner has stated a claim of constitutional deprivation.

In *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court held that a state court could not impose a greater sentence on a defendant after re-trial following a successful appeal unless "the reasons for [its] doing so ... affirmatively appear [in the record]." *Id.* at 726, 89 S.Ct. at 2081. In the absence of such record evidence, the chilling effect of an inference that the defendant was being punished for exercising his constitutionally protected right to appeal or collaterally attack his conviction was held to violate the Fourteenth Amendment's Due Process Clause.

Relying on the equally protected constitutional right to trial by jury, and the equally recognized principle that the "Constitution forbids the exaction of a penalty for a defendant's unsuccessful choice to stand trial," due to the chilling effect on the exercise of this right, *Smith v. Wainwright*, 664 F.2d 1194, 1196 (11th Cir.1981), the Ninth Circuit has held in noncapital cases that:

> [O]nce it appears in the record that the court has taken a hand in plea bargaining, that a tentative sentence has been discussed, and that a harsher sentence has followed a breakdown in negotiations, the record must show that no improper weight was given the failure to plead guilty. In such a case, the record must affirmatively show that the court sentenced the defendant solely upon the facts of his case and his personal history, and not as punishment for his refusal to plead guilty.

*United States v. Stockwell*, 472 F.2d 1186, 1187–88 (9th Cir.1973).

Moreover, the Supreme Court has expressly recognized that the Eighth Amendment's heightened due process reliability requirement in capital cases applies with equal force to permissible plea bargaining practices. In *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), the Supreme Court invalidated the procedures of the Federal Kidnapping Act under which a defendant would receive a life sentence if he pleaded guilty but could

receive a death sentence if he chose to stand trial. In *Corbitt v. New Jersey,* 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978), the Supreme Court approved the practice of extending leniency for a guilty plea in noncapital cases, but expressly noted that "the death penalty, which is 'unique in its severity and irrevocability,' is not involved here." *Id.* at 217, 99 S.Ct. at 496 (quoting *Gregg v. Georgia,* 428 U.S. 153, 187, 96 S.Ct. 2909, 2931, 49 L.Ed.2d 859 (1976)). Justice Stewart, the author of *Bordenkircher,* concurred in the result in *Corbitt* on the grounds that *Jackson* did not apply because the death penalty was not involved and *Bordenkircher* did not apply because it simply involved the prosecutor's acting within the adversary system and not a state statute as in *Corbitt.* 439 U.S. 226–28, 99 S.Ct. 501–02.

Finally, the Supreme Court has recognized the unique power of the death penalty to coerce guilty pleas and thus chill the exercise of the constitutionally protected right to trial by jury. In *Jackson,* the Court stated that, because "assertion of the right to jury trial may cost [a defendant] his life," the Federal Kidnapping Act impaired the exercise of this right. 390 U.S. at 572, 88 S.Ct. at 1211. The evil in the statute was "not that it necessarily *coerces* guilty pleas and jury waivers but simply that it needlessly *encourages* them." *Id.* at 583, 88 S.Ct. at 1217.

In light of this precedent, it is clear the Eighth Amendment's requirement that a "decision to impose the death sentence be,

and appear to be, based on reason," *Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977), is not met by a system in which the trial court tenders a life sentence as part of a plea bargain before trial and then imposes the death sentence without explanation after the defendant has exercised his right to stand trial. The inference that the defendant is being punished by the ultimate sanction for exercising his constitutionally protected right to trial is, without record evidence to the contrary, unacceptable. I would therefore hold that petitioner's allegations state a claim under the Eighth Amendment and the Fourteenth Amendment's Due Process Clause.

A transcript of the plea conference at which the alleged offer to accept a life sentence in return for a guilty plea was either tendered to defendant and his counsel or approved by the trial court is not a part of the record now before this Court. No evidentiary hearing to determine the accuracy of petitioner's crucial allegation that the trial court in fact approved such an offer has been held in either the state courts or the district court. Instead, the sole evidence before this Court on this issue are remarks made at petitioner's sentencing hearing, *see* majority opinion, *supra,* at note 2, which are ambiguous at best and are insufficient to evaluate the accuracy of petitioner's claim. I therefore would hold that petitioner is entitled to an evidentiary hearing in the district court on this issue.[4]

---

**4.** The warden-appellee argues that the Florida Supreme Court on direct appeal made historical findings of fact on this issue entitled to the statutory presumption of correctness under 28 U.S.C.A. § 2254(d). On direct appeal, the Florida Supreme Court rejected the petitioner's claim that "the trial court offered him a sentence of life imprisonment in return for a plea of nolo contendere as charged" and thus that the trial court imposed the death sentence because he exercised his right to a jury trial. 413 So.2d at 746. The Florida Supreme Court concluded:

> Hitchcock's version of the facts surrounding this point ... is not supported. Rather, it appears from the record, as supplemented, that the judge agreed only to consider such an agreement if Hitchcock were to plead guilty. Because Hitchcock refused to consider a plea, the court never had to consider whether to accept the plea bargain. When defense counsel reminded the judge during sentencing proceedings of the plea negotiations, the judge responded, "there was never any under-

standing because your client didn't want to consider any plea."

*Id.*

Petitioner notes that the record before the Florida Supreme Court consisted solely of the remarks made during sentencing and was supplemented only by affidavits of both petitioner's counsel and the prosecutor. The affidavit of petitioner's counsel, executed contemporaneously with the trial proceedings, states: "Judge Paul indicated that he would accept a plea of nolo contendere as charged and that [petitioner] would be sentenced to life imprisonment." The prosecutor's affidavit is to the contrary: "Judge Paul indicated that he would consider [the State's] recommendation, *should* the ... defendant actually plead guilty as charged." Petitioner also argued to the Florida Supreme Court that, should it find the record insufficient and the affidavits contradictory, it should remand to the state habeas court for an evidentiary hearing. Based on these facts, petitioner claims that the Florida Supreme Court's factfinding procedure

**1348**

ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, ANDERSON and CLARK, Circuit Judges.*

BY THE COURT:

A member of this court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in this court in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the cause shall be reheard by this court en banc *with* oral argument on a date hereafter to be fixed. The clerk will specify a briefing schedule for the filing of en banc briefs.

in resolving clearly contradictory affidavits against him, relying on the ambiguous remarks made at sentencing which can fairly be read to support both versions of the facts, and refusing to allow a hearing on the factual dispute or to reconstruct the unavailable record, was inadequate to afford him a full and fair hearing, so that its finding that the trial judge agreed only to consider an agreement if he pleaded guilty, and thus never had an opportunity to consider

whether to accept the bargain, is not entitled to a presumption of correctness under Section 2254(d)(2).

* Judge Joseph W. Hatchett recused himself and did not participate in this decision.