**James Ernest HITCHCOCK, Petitioner-Appellant,**

**v.**

**Louie L. WAINWRIGHT, Respondent-Appellee.**

No. 83–3578.

United States Court of Appeals, Eleventh Circuit.

Aug. 28, 1985.

Richard B. Greene, Richard H. Burr, Craig Barnard, West Palm Beach, Fla., for petitioner-appellant.

Richard Prospect, Asst. Atty. Gen., Daytona Beach, Fla., for respondent-appellee.

Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, ANDERSON and CLARK, Circuit Judges, and MORGAN, Senior Circuit Judge.*

RONEY, Circuit Judge:

This case was taken on rehearing *en banc* principally to consider two of several constitutional claims raised by petitioner James Ernest Hitchcock. He asserts (1) that at the time of his capital sentencing, Florida law unconstitutionally discouraged his attorney from investigating and presenting nonstatutory mitigating evi-

---

* Circuit Judge Joseph W. Hatchett, having recused himself, did not participate in this decision. Senior Circuit Judge Lewis R. Morgan elected to participate in this decision pursuant to 28 U.S.C. § 46(c).

dence, and (2) that the trial court improperly considered petitioner's refusal to plead guilty in imposing a death sentence. The district court denied all claims raised by Hitchcock without conducting an evidentiary hearing. We affirm.

In January 1977, Hitchcock was convicted and sentenced to death for the murder of his brother's thirteen-year-old stepdaughter. The Florida Supreme Court affirmed his conviction and sentence. *Hitchcock v. State*, 413 So.2d 741 (Fla.), *cert. denied*, 459 U.S. 960, 103 S.Ct. 960, 74 L.Ed.2d 213 (1982). The denial of Hitchcock's state post-conviction motion to vacate judgment and sentence was likewise affirmed. *Hitchcock v. State*, 432 So.2d 42 (Fla.1983). After his federal petition for habeas corpus was denied by the district court, Hitchcock raised five issues on appeal. The panel opinion, one judge dissenting on two issues, affirmed the denial of relief as to all issues. *Hitchcock v. Wainwright*, 745 F.2d 1332 (11th Cir.1984), *vacated for reh'g en banc*, 745 F.2d 1348 (11th Cir.1985).

With respect to his claims on sufficiency of the evidence, arbitrariness of the death penalty in Florida, and the *Brown* issue decided in *Ford v. Strickland*, 696 F.2d 804 (11th Cir.) (*en banc*), *cert. denied*, — U.S. ——, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983), we now reinstate the sections of the panel opinion denying relief. Although closely following the panel discussion, we set forth fully in the opinion for the *en banc* court the reasons for rejecting Hitchcock's other two claims.

## I. *Restriction of Mitigating Evidence.*

 The confusion in Florida law surrounding nonstatutory mitigating evidence in capital sentencing has been discussed at length in prior decisions of this Court. *Hitchcock v. Wainwright*, 745 F.2d 1332, 1335–37 (11th Cir.1984); *Ford v. Strickland*, 696 F.2d 804, 813 (11th Cir.1983) (*en banc*), *cert. denied*, — U.S. ——, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983); *Proffitt v. Wainwright*, 685 F.2d 1227, 1238–39 (11th Cir.1982), *cert. denied*, — U.S. ——, 104

S.Ct. 508, 78 L.Ed.2d 697 (1983); *see also Songer v. Wainwright*, — U.S. ——, 105 S.Ct. 817, 819–22, 83 L.Ed.2d 809, 812–14 (1985) (Brennan, J., dissenting from denial of certiorari). In summary, for six years after the Florida death penalty statute was reenacted in 1972, there was some ambiguity as to whether a defendant had a right to introduce evidence in mitigation at a capital sentencing proceeding when the evidence fell outside the mitigating factors enumerated in the statute. The opinions cited above set forth the manner in which this uncertainty first arose in *State v. Dixon*, 283 So.2d 1 (Fla.1973), *cert. denied sub nom. Hunter v. Florida*, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), and was exacerbated by *Cooper v. State*, 336 So.2d 1133 (Fla.1976), *cert. denied*, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977). The confusion was finally alleviated in *Songer v. State*, 365 So.2d 696 (Fla.1978), *cert. denied*, 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979), after the United States Supreme Court had ruled in *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978) that "the Eighth and Fourteenth Amendments require that the sentencer ... not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record."

A number of Florida prisoners sentenced to death before *Songer* was decided have since sought constitutional relief, claiming that the confusion in Florida law inhibited investigation, presentation, and consideration of nonstatutory mitigating evidence at their capital sentencing. The basic legal problems have been addressed in a variety of contexts: as a *Lockett* challenge to the facial constitutionality of the death penalty statute itself as interpreted in *Cooper* by the Florida Supreme Court, *see Spinkellink v. Wainwright*, 578 F.2d 582, 620–21 (5th Cir.1978), *cert. denied*, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979); as a claim that counsel was ineffective in failing to investigate or present nonstatutory mitigating evidence, *see Proffitt v. Wainwright*, 685 F.2d 1227, 1248 (11th Cir.1982), *cert. denied*, — U.S. ——, 104 S.Ct. 508,

78 L.Ed.2d 697 (1983) and *Songer v. Wainwright,* 571 F.Supp. 1384, 1393–97 (M.D. Fla.1983), *aff'd,* 733 F.2d 788, 791 n. 2 (11th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 817, 83 L.Ed.2d 809 (1985); as a challenge to jury instructions as restricting the scope of mitigating evidence to that enumerated in the statute, *see Ford v. Strickland,* 696 F.2d 804, 813 (11th Cir.) (*en banc*) *cert. denied,* — U.S. —, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983); *Foster v. Strickland,* 707 F.2d 1339, 1346–47 (11th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 2375, 80 L.Ed.2d 847 (1984); and *Songer v. Wainwright,* 733 F.2d 788, 792 (11th Cir.1984); and as a claim arising under *Lockett v. Ohio* that Florida law as applied discouraged and prevented introduction of available nonstatutory mitigating evidence. *See Hitchcock v. Wainwright,* 745 F.2d 1332, 1335–37 (11th Cir.1984); *see also Songer v. Wainwright,* — U.S. —, 105 S.Ct. 817, 817, 83 L.Ed.2d 809, 810 (1985) (Brennan, J., dissenting from denial of certiorari).

To date, this Court has considered these claims on a case-by-case basis, evaluating the impact of Florida law on each individual petitioner's capital sentencing hearing. We now reaffirm that approach. The *en banc* Court has determined that an analysis should be made in each case presented to evaluate a petitioner's claim on the particular facts of the case. A court should consider the status of Florida's law on the date of sentencing, the record of the trial and sentencing, the jury instructions requested and given, post-trial affidavits or testimony of trial counsel and other witnesses, and proffers of nonstatutory mitigating evidence claimed to have been available at the time of sentencing. In some cases, full and fair consideration of the claim will necessitate an evidentiary hearing. Although generally an evidentiary hearing on the issue is preferable, in some cases, such as the one before us, the record will be sufficient to support a decision in the absence of an evidentiary hearing.

In the instant case, the district court dismissed this claim on the grounds that Florida law did not limit what evidence could be produced in mitigation at the penalty stage and that the record indicated petitioner's attorney did not think he was constrained by the statute.

The evidence proffered to the district court does not establish the right to constitutional relief. Although there was a proffer of evidence that the trial attorney may have been mistaken about Florida law, the record belies the argument that at the time of the case, the presentation to the jury would have been appreciably different had it not been for the possible confusion of petitioner's attorney as to the law on mitigating circumstances.

Petitioner submitted an affidavit of the attorney, a public defender, who represented him at trial and sentencing. The affidavit of the attorney is carefully written. It states that although the attorney does not have an independent recollection, he is of the opinion, upon reviewing the transcript, that during his representation of petitioner his perception was that consideration of mitigating circumstances was limited to the factors enumerated by the statute. It says he is aware of the current status of the case and that evidence of relevant mitigating circumstances was not investigated or presented in petitioner's sentencing trial. The affidavit does not indicate, however, that he would have done anything differently at that time.

At the sentencing hearing, petitioner's attorney called petitioner's brother, James, who testified about petitioner at the age of five or six, about his father's death, about the farm work of both the mother and the father hoeing and picking cotton in Arkansas, that there were seven children in the family, and that he left "Ernie" to babysit with the brother's small children. Other testimony relating to petitioner's character had come out at trial. Petitioner testified he left home when he was thirteen because he could not tolerate seeing his stepfather abuse his mother. His mother testified that he was a good child and he minded her. Three of his siblings told the jury he was not a violent person. During closing

argument the attorney referred to much of the evidence not fitting squarely within the confines of the statutory mitigating circumstances including the difficult circumstances of petitioner's upbringing, the possibility of rehabilitation, and that petitioner voluntarily turned himself in. Finally, he admonished the jury to "look at the overall picture. You are to consider everything together ... consider the whole picture, the whole ball of wax."

Petitioner has suggested several different pieces of evidence of nonstatutory mitigating circumstances which might have been presented. First, he argues that testimony by psychologists could have been introduced which would have corroborated lingering doubts about guilt and shown petitioner was an excellent candidate for rehabilitation. Such testimony would tend to establish his innocence, he says, by bringing out that he had coped with stressful situations throughout his life by retreating or escaping. There is no indication in this record, however, that the attorney at the time of sentencing would have followed this course even if he had known he could. Such matters are not judged from hindsight. *Strickland v. Washington*, 466 U.S. 668, ——, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 694 (1984). It should be noted that mental and emotional conditions are statutorily permitted mitigating considerations. Fla.Stat.Ann. § 921.141(6)(b). Petitioner has cited us no cases holding that the mere failure to investigate or produce psychological or psychiatric evidence renders a sentencing proceeding unconstitutional.

Petitioner argues that greater details as to his upbringing in an environment of extreme poverty, his solid character traits, devotion to hard work, willingness to contribute to the family's support, and respect for adults should have been presented as evidence of nonstatutory mitigating factors. All of this was developed, however, to some extent for the jury. As described above, elements of petitioner's character and other background information were testified to by petitioner's brother, sisters, and mother as well as by petitioner himself. Petitioner's trial counsel

reminded the jury of these facts during closing argument in the penalty phase.

It thus appears that petitioner was not denied an individualized sentencing hearing.

II. *Life Sentence Offered for Guilty Plea—Death Sentence Imposed After Conviction.*

Petitioner asserts that the state trial judge imposed the death sentence as punishment for petitioner's decision to go to trial rather than plead guilty. Petitioner alleged that the prosecutor and the judge together offered him a plea bargain which would exchange his plea of guilty for a life sentence. Petitioner declined the offer. After trial, the judge on the jury's recommendation sentenced petitioner to death. Petitioner argues his death sentence must be overturned because the trial judge's sentencing order did not explain why death became an appropriate penalty after trial.

The record is unclear as to whether the trial judge indicated he would approve a life sentence on guilty plea, or merely would consider it. We treat the case as if the defendant would have received a life sentence on a guilty plea.

■ Although the principle of law that petitioner argues would apply on retrial and resentencing after a successful appeal, *North Carolina v. Pearce*, 395 U.S. 711, 726, 89 S.Ct. 2072, 2081, 23 L.Ed.2d 656 (1969); *Blackledge v. Perry*, 417 U.S. 21, 28–29, 94 S.Ct. 2098, 2102–03, 40 L.Ed.2d 628 (1974), it does not apply to the failure of a plea bargain. *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 667, 54 L.Ed.2d 604 (1978). In the "give-and-take" of plea bargaining, the state may extend leniency to a defendant who pleads guilty foregoing his right to jury trial. *Brady v. United States*, 397 U.S. 742, 753, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970). Legislative schemes which extend the possibility of leniency to defendants who plead guilty are permissible so long as the statute does not unnecessarily burden the assertion of constitutional rights or act to

coerce inaccurate guilty pleas. *Compare United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) (statute invalid when defendant could only receive death sentence if he went to trial) *with Corbitt v. New Jersey,* 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978) (statute valid when plea of *non vult* gave possibility of sentence of not more than 30 years but conviction at trial carried mandatory life sentence). A judge, as much as the prosecutor and the legislature, should not be precluded from approving leniency in sentencing upon an admission of guilt. *Cf. Corbitt,* 439 U.S. at 224 n. 14, 99 S.Ct. at 500 n. 14 (cannot permit prosecutor to offer leniency but not legislature).

In criminal cases generally, sentencing after conviction following a failed plea bargain presents a different situation from sentencing on retrial after a reversal of a prior conviction or sentence. Upon a second conviction after a prior conviction has been set aside, a defendant stands in the same posture for sentencing as he did after his first conviction. Presumably the facts before the court for determination of the correct sentence would be the same in both instances. Unless the court cites circumstances which occurred after his original sentence, a greater sentence would appear to be for no reason other than a penalty for the defendant's challenging of his conviction. *See Wasman v. United States,* —— U.S. ——, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984).

A defendant who pleads guilty, however, is in a markedly different posture from a defendant who is convicted at trial. Only after trial and a sentencing hearing has the trial court learned all of the facts which might be considered for sentencing. On a plea bargain, the defendant's and prosecutor's agreement forecloses the necessity for such a detailed explanation.

Moreover, by pleading guilty a defendant confers a substantial benefit to the objectives of the criminal justice system:

the more promptly imposed punishment after an admission of guilt may more effectively attain the objectives of punishment; and with the avoidance of trial, scarce judicial and prosecutorial resources are conserved for those cases in which there is a substantial issue of the defendant's guilt or in which there is substantial doubt that the State can sustain its burden of proof.

*Brady v. United States,* 397 U.S. at 752, 90 S.Ct. at 1471. The state is entitled to extend a sentence of less than that which might otherwise be appropriate to a defendant that confers such a benefit on it. 397 U.S. at 753, 90 S.Ct. at 1471. The heart of a plea bargain, from a defendant's point of view, is the option of avoiding a possibly harsher sentence after conviction at trial.

■ Absent a demonstration by the defendant of judicial vindictiveness or punitive action, a defendant may not complain simply because he received a heavier sentence after trial. *Blackmon v. Wainwright,* 608 F.2d 183 (5th Cir.1979), *cert. denied,* 449 U.S. 852, 101 S.Ct. 143, 66 L.Ed.2d 64 (1980). We have held that a mere allegation of discrepancy between a defendant's actual sentence and that which he would have received had he foregone trial to plead guilty does not invalidate the sentence. *Smith v. Wainwright,* 664 F.2d 1194, 1197 (11th Cir.1981).

■ In capital cases particularly, there is no merit to the argument that the sentencing judge should have set forth the reasons why the sentence after trial was greater than what would have been approved on a guilty plea. The precise reasons for a death sentence are required by Florida statute to be set forth by the sentencing judge. The possibility of a different sentence because the defendant pleads guilty does not run afoul of the requirement that the "decision to impose the death sentence be, and appear to be, based on reason." *Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977). In this case, the court imposed the death penalty only after fully considering the aggravating and mitigating circumstances and receiving the jury's recommendation of death. The procedure in Florida fully

meets the Ninth Circuit's requirements that if a court participates in plea bargaining "the record must show that the court sentenced the defendant solely upon the facts of his case and his personal history, and not as punishment for his refusal to plead guilty." *United States v. Stockwell,* 472 F.2d 1186, 1187–88 (9th Cir.), *cert. denied,* 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973).

 A trial court which approved a sentence based on a plea bargain prior to trial need not, upon rejection of that offer and conviction at trial, restrict its sentence to that offered for the plea bargain, set forth reasons for harsher sentence, nor impose such sentence only for conduct occurring after the aborted plea bargaining.

The district court properly denied Hitchcock's petition for habeas corpus.

AFFIRMED.

JOHNSON, Circuit Judge, dissenting, joined by CLARK, Circuit Judge, and joined as to Part I by GODBOLD, Chief Judge, KRAVITCH and R. LANIER ANDERSON, III, Circuit Judges:

The district court denied habeas corpus relief to James Ernest Hitchcock without conducting an evidentiary hearing. The failure to conduct such a hearing should determine the outcome in this case, for two of the allegations of error raised by the petitioner are legally sufficient to require a grant of relief and the only real question is the truth of his factual allegations. We cannot at this point determine whether Hitchcock was convicted and sentenced in accordance with the Constitution, and should therefore remand the case for fact-finding by the district court. Accordingly, I dissent.

## I. *Cooper/Lockett* claim

The petitioner in this case contends that Florida law at the time of his sentencing hearing was most reasonably interpreted to restrict the presentation of mitigating evidence in violation of *Lockett v. Ohio,* 438

U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and that the interpretation of state law operated in his case to prevent him from presenting some mitigating evidence to the jury. The first half of this argument is virtually beyond dispute, while the second half can be properly evaluated only after an evidentiary hearing.

### A. State law at the time of Hitchcock's trial

As the majority concedes, a progression of events from the enactment of the post-*Furman* * Florida death penalty statute in 1972 to the time of his sentencing trial in 1977 created the possibility that state law would restrict improperly the types of mitigating evidence that could be presented. Whether such restrictions actually affected any particular sentencing hearing during this time must be determined on the facts of each case, and Hitchcock's claim must be viewed in light of the fact that at the time of his sentencing trial in 1977 the confusion regarding state law was at its very height. *Cf. Songer v. Wainwright,* 769 F.2d 1488 (11th Cir.1985).

Defense counsel, prosecutor and trial judge were all interpreting the statute in light of erroneous or misleading language in the statute itself, *compare* FLA.STAT. 921.141(2), (3) (describing task of jury and sentencing judge as balancing of aggravating circumstances against mitigating circumstances "as enumerated" in statute) *with* FLA.STAT. 921.141(5), (6) (aggravating circumstances "shall be limited" to eight categories, while mitigating circumstances "shall be" those contained in listed categories), and decisions of the Florida Supreme Court, including *State v. Dixon,* 283 So.2d 1, 7 (Fla.1973) (statute creates "a system whereby the possible aggravating and mitigating circumstances are defined"), and *Cooper v. State,* 336 So.2d 1133, 1139 (Fla.1976) (upholding trial court's decision to exclude evidence on relevance grounds because proffered evidence bore no relevance to issue involved at sentencing pro-

---

* *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

ceeding; sole issue in capital sentencing "is to examine in each case the *itemized* aggravating and mitigating circumstances. Evidence concerning other matters have [sic] no place in that proceeding.") (Emphasis supplied). *See id.* at 1139 n. 7. The relevant law at this time has been described in greater detail elsewhere, *see Songer v. Wainwright,* ——— U.S. ———, 105 S.Ct. 817, 819–22, 83 L.Ed.2d 809, 812–14 (1985) (Brennan, J., dissenting from denial of certiorari). Here it will suffice to note that the erroneous or confusing signals regarding mitigating evidence that were operating in this case were more plentiful than at any time before or since.

The confusion affected cases tried during this time other than this one. In *Songer v. State,* 365 So.2d 696 (Fla.1978), *cert. denied,* 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979), the court cited several cases in which it had affirmed sentences imposed after trial courts had allowed non-statutory mitigating circumstances into evidence. While it is possible to question the accuracy of each of the seven citations since they arguably involved statutory rather than non-statutory mitigating circumstances, Hitchcock does not claim that all Florida courts followed an unconstitutional interpretation of state law. Rather, he claims that the improperly restrictive view was possible under state law and was followed in a number of cases, including his own. Several facts tend to support his contention. First, none of the seven cases explicitly state in holding or dicta that a trial court may consider mitigating evidence outside the statute. Second, during the time that defendants in some cases were perhaps proffering non-statutory evidence, the Florida Supreme Court appeared to reaffirm in other cases the restrictive interpretation of *Cooper.* For instance, in *Gibson v. State,* 351 So.2d 948, 951–52 (Fla. 1977), the court found no mitigating circumstances present at all and simply recited the lower court's findings concerning the absence of statutory mitigation. *See also Perry v. State,* 395 So.2d 170, 174 (Fla.1981) (in trial before *Songer,* trial

judge relied on *Cooper* and precluded evidence of non-statutory factors).

The possibility of an unconstitutionally restrictive application of the statute has been recognized by almost every federal appellate decision mentioning the issue. *Spaziano v. Florida,* ——— U.S. ———, 104 S.Ct. 3154, 3158 n. 4, 82 L.Ed.2d 340 (1984) (Florida statute in effect in 1976 required consideration of only statutory mitigating factors); *Songer v. Wainwright,* 769 F.2d 1488 at 1489 (11th Cir.1985); *Foster v. Strickland,* 707 F.2d 1339, 1346 (11th Cir. 1983) (*Cooper* in direct conflict with *Lockett*); *Ford v. Strickland,* 696 F.2d 804, 812 (11th Cir.), *cert. denied,* ——— U.S. ———, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983) (same); *Proffitt v. Wainwright,* 685 F.2d 1227, 1238 & nn. 18–19, 1248 (11th Cir.1982), *cert. denied,* ——— U.S. ———, 104 S.Ct. 508, 78 L.Ed.2d 697 (1983) (Florida law in flux, reasonable to interpret as limiting mitigating evidence to statutory categories); *but see Spinkellink v. Wainwright,* 578 F.2d 582, 620–21 (5th Cir.1978), *cert. denied,* 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979) (statute on its face does not improperly restrict use of mitigating circumstances). Thus, Hitchcock has successfully proven the first half of his argument, to wit, Florida law in February 1977 was highly susceptible to an interpretation that violated *Lockett v. Ohio.*

B. Effect of Florida law in Hitchcock's case

The petition for habeas corpus in this case forthrightly states that Hitchcock's trial counsel, Tabscott, believed that Florida law prohibited him from introducing mitigating evidence falling outside the confines of the statutory list. It also alleges that this understanding of state law directly caused him to pass over critical pieces of mitigating evidence.

The district court summarily dismissed the petition under Rule 4 of the Rules Governing Section 2254 Cases, without an evidentiary hearing. Under *Blackledge v. Allison,* 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977), summary dismissal is

proper only under limited circumstances. The majority in this case has necessarily concluded, therefore, that proof of the claim does not depend upon facts outside the record or that the allegations in the petition are "palpably incredible" or "patently frivolous or false." *Id.* at 76, 97 S.Ct. at 1630.[1] None of those conditions are present in this case.

The best factual support for the factual allegations in the petition appears in the affidavit of Tabscott stating that at the time of trial he believed that non-statutory mitigating factors were inadmissible. The majority correctly notes that this affidavit leaves many unanswered questions regarding Tabscott's understanding of state law at the time of sentencing and the effect that state law had on his conduct of the defense. No court has made findings of fact regarding Tabscott's understanding of state law. The existing record does not reveal whether and how Tabscott acted on his alleged beliefs regarding the restrictions of state law and there has been no evidentiary hearing regarding this matter, although the Florida Supreme Court stated in Hitchcock's direct appeal that the trial judge had not erroneously limited the types of mitigating evidence presented to the jury because "the defense itself chose to limit that presentation." 413 So.2d at 748. The extent to which the affidavit falls short of proving the allegations of the petition only underscores the necessity for an evidentiary hearing.

The truth of Hitchcock's claim is also supported, but not established, by the existence of several pieces of evidence that could have been investigated and introduced at his trial if his attorney had not held a restrictive view of the statute. He describes extensive testimony that he could have elicited from family members and a law enforcement officer regarding the difficult circumstances of his childhood and his good prospects for rehabilitation. He also proferred before the district court the testimony of a psychologist who had examined Hitchcock. Her testimony related to the lingering possibility of Hitchcock's innocence (attacking the victim in a time of stress would have been an uncharacteristic response for Hitchcock) and to the possibility of rehabilitation.[2]

On the other hand, Hitchcock did present at the sentencing trial the testimony of his brother. The primary purpose of the testimony was to substantiate the existence of a statutory mitigating circumstance: substantial impairment of his ability to appreciate the criminality of his actions. To this end, the brother testified that Hitchcock had "sucked gas" as a child and that as a result his mind "wandered." The brother also related to the jury in brief fashion (two transcript pages) that Hitchcock had grown up on a farm, that his father had died of cancer, and that he had served as babysitter for several family members. These facts were not statutory mitigating evidence; yet Tabscott elicited the testimony only as background to the brother's testimony regarding the statutory factor, and did not stress it in closing argument or characterize it as a mitigating factor that could enter into the jury's formal balancing process. He stated that the jury should consider the background information "for whatever purposes you may deem appropriate." Tabscott also referred in passing to the evidence of Hitchcock's character presented earlier during the guilt-innocence

---

1. *Blackledge* also provides for summary dismissal when the petitioner has stated no claim upon which relief can be granted. The majority does not hold that Hitchcock's claim is insufficient as a matter of law.

2. The majority makes reference to the statutory mitigating circumstance involving mental and emotional conditions. These do not permit the inference, however, that state law could not have limited the presentation of available evidence. First, much of the available but unpresented evidence had no connection with mental and emotional conditions. Second, the testimony of the psychologist would not fit under any of the statutory mitigating circumstances, for they refer to an "extreme mental or emotional disturbance" and to "substantial" impairment of the capacity to appreciate the criminality of one's conduct or to conform conduct to the requirements of law. FLA.STAT. § 921.-141(6)(b), (f).

trial. At the close of his argument, he made the statement that the jury should consider "everything together," although it is far from clear whether he meant by this statement that the jury should consider all statutory and non-statutory mitigating evidence or simply that they should weigh in whatever way they saw fit the mitigating evidence that the law permitted them to consider.

The preceding overview of the evidence presented at sentencing confirms that some evidence not strictly related to statutory mitigating factors was placed before the jury. The question is whether this renders "palpably incredible" or "patently false" Hitchcock's allegation that state law restricted the presentation of mitigating evidence. The only reasonable conclusion is that it does not.

The opinion in *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978), states that the sentencer must be able to hear *any* mitigating evidence relating to the defendant's character or record or the circumstances of the offense, not just *some* evidence outside the bounds of a statutory catalogue. It should not matter whether the restriction of mitigating evidence is a complete failure to mention the evidence or the failure to develop it fully and incorporate it into the defense. The issue to be resolved in an evidentiary hearing would be causation rather than the type of restriction involved: Did state law really cause counsel to restrict the presentation of mitigating evidence?

A lawyer might believe that state law prohibits the use of non-statutory mitigating evidence and could still introduce some evidence of that type and make passing reference to it in the belief that it would not provoke an objection so long as the reference is brief and unimportant. Similarly, a lawyer may feel free to mention evidence during closing argument that was adduced during the guilt-innocence trial, in the belief that the restrictions of state law apply primarily to the introduction of evidence at sentencing and do not place such stringent limits on closing arguments.

Each of these explanations is consistent with the record and with each of the allegations of the petition; none of them are palpably incredible or patently false.

The majority's willingness to assume no causal link between Tabscott's interpretation of state law and his presentation of the defense stands in marked contrast to the court's recent decision in *Songer v. Wainwright,* 769 F.2d 1488 at 1489 (11th Cir. 1985). In that case the court was confronted with evidence that a trial judge had believed that state law prohibited him from considering non-statutory mitigating evidence as he reached a decision regarding the appropriate sentence. The en banc court granted habeas corpus relief despite the lack of conclusive evidence regarding a causal link between the judge's beliefs and the sentence imposed, for it was not clear just what mitigating evidence the trial court had refused to consider as a result of his statutory interpretation. *Songer* should demonstrate that once a petitioner establishes that a restrictive interpretation of state law could have limited the type of mitigating evidence presented to or considered by the sentencer, incomplete evidence of a causal link between the operation of state law and the mitigating evidence actually considered or presented will not defeat the claim. Hitchcock is entitled to an evidentiary hearing at least as clearly as Songer deserved habeas corpus relief.

In sum, the truth of the factual allegations in the petition remains an open question that should be answered in an evidentiary hearing. Hence it is not proper to deny habeas corpus relief on this claim at this stage of the proceedings.

## II. Plea Negotiations

During a pretrial conference, the state court judge allegedly told Hitchcock's lawyer that he would impose a life sentence if the defendant pleaded nolo contendere, an offer that Hitchcock refused. No transcript of this conference was ever made but Hitchcock's attorney executed a contemporaneous affidavit documenting the refused offer. Hitchcock claims that the death sen-

tence was imposed upon him as punishment for his decision to reject this plea offer by the trial court. The death sentence, he argues, was an improper burden on his right to a jury trial.

In order to decide whether there is a need for further factfinding, it is necessary to determine (1) whether, assuming Hitchcock's allegations are true, he has stated a claim upon which relief can be granted, (2) whether the state court's factual findings on this matter are sufficient and correct.

### A. Sufficiency of claim

The majority assumes that the facts were just as Hitchcock alleged: the trial court and the prosecutor offered in conference before trial to accept from Hitchcock a plea of nolo contendere in exchange for a life sentence, an offer which Hitchcock refused. The same trial court imposed the death sentence on Hitchcock without stating on the record the reasons for increasing the punishment from life imprisonment. The majority then holds that these facts are insufficient to state a basis for relief.

Normally the initiation and breakdown of plea negotiations would not prevent the court from imposing a sentence heavier than the one originally offered. Under *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), a prosecutor may in the give-and-take of plea bargaining make an offer and then later seek a more severe punishment. But this was no ordinary breakdown in bargaining, for two reasons. First, the court became involved in the negotiations; second, the sentence imposed was death.

The fact that the court itself offered the life sentence to Hitchcock makes this case similar to *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), which held that a state court could not impose a greater sentence on a defendant after retrial following a successful appeal unless the reasons for doing so affirmatively appeared on the record. Any other result would imply that a defendant was being punished for exercising the constitutional right to appeal or to attack collaterally a conviction.

The involvement of the trial court was important to the finding of a due process violation in *Pearce:* "It is unfair to use the great power given to the court to determine sentence to place a defendant in the dilemma of making an unfree choice." 395 U.S. at 724, 89 S.Ct. at 2080 (quoting *Worcester v. Commissioner*, 370 F.2d 713, 718 (1st Cir.1966). While *Pearce* did involve sentencing at retrial rather than a first trial, the right to stand trial in the first instance is no less fundamental than the right to appeal that was involved in *Pearce*, and the mechanism for burdening the defendant's right carries the same appearance of impropriety whenever the court brings its coercive power to bear in negotiations. Indeed, the Ninth Circuit has found the analogy between the two situations persuasive enough to construct a general constitutional rule against judicial involvement in plea negotiations: "Once it appears on the record that the court has taken a hand in plea bargaining, that a tentative sentence has been discussed, and that a harsher sentence has followed a breakdown in negotiations, the record must show that no improper weight was given the failure to plead guilty." *United States v. Stockwell*, 472 F.2d 1186 (9th Cir.), *cert. denied*, 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973).

Such an application of *Pearce* might not be constitutionally mandated; it is certainly unnecessary here. Disclosure of reasons for enhanced sentences in all cases of judicial involvement in plea negotiations might not be constitutionally required because, as the majority points out, vindictiveness is more likely to motivate harsher sentences after appeal and retrial than after rejection of a plea bargain: in the latter case, the proof at trial is available to explain the enhanced sentence.[3] Yet Hitchcock's case

---

**3.** On the other hand, Supreme Court precedent certainly does not foreclose the *Stockwell* rule. *Bordenkircher* involved negotiations between a prosecutor and a defendant, parties of roughly equal strength, whereas the participation of the court is more markedly coercive to the defend-

does not call for a constitutional rule applying to all judicial involvement in plea negotiations. The fact of judicial involvement in plea negotiations is joined in this case by the fact that the enhanced sentence is the sentence of death.

The majority's attempt to address the problem of judicial involvement in the plea bargaining process completely ignores the peculiarly coercive impact of a threatened death penalty. It is true, as the majority states, that prosecutors may participate in plea-bargaining, *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), and legislators may within certain limits create statutes that reward defendants for foregoing trial, *Corbitt v. New Jersey,* 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978). Yet legislatures are restricted in their use of the death penalty to induce guilty pleas. For instance, in *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), the Court invalidated the procedures of the Federal Kidnapping Act under which a defendant would receive a life sentence if he plead guilty but could receive a death sentence if he chose trial. The Court stated that where the assertion of the right to a jury trial could cost a defendant his life, the statute "needlessly encourages" guilty pleas. And in *Corbitt v. New Jersey,* 439 U.S. 212, 217, 99 S.Ct. 492, 496, 58 L.Ed.2d 466 (1978), the Court approved a statute extending leniency in return for a guilty plea in non-capital cases, but noted that "the death penalty, which is unique in its severity and irrevocability" was not involved. The same limits applicable to legislative use of the death penalty threat as an incentive to defendants should apply with equal force to judges.

Moreover, the unusually coercive power of the threat of a death sentence is heightened further when the threat comes directly from the judge, who plays a critical and sometimes decisive role in the capital sentencing process. Judges are not limited in their power to punish a defendant for in-

sisting on the right to trial by weighing that fact in determining the sentence as prosecutors and legislators are. Prosecutors do not have the power themselves to determine sentence, and the legislature must pass general legislation without singling out particular defendants. The particularly sensitive and coercive role of the judge in the defendant's decision to plead guilty has been often noted in the context of Fed.R.Crim.P. 11. *See United States v. Adams,* 634 F.2d 830 (5th Cir.1981). The majority's equation of legislators, prosecutors and judges does not account for the uniquely coercive power held by judges.

Assuming, then, that the judge in this case did offer a reduced risk of receiving the death penalty in order to induce a plea of guilty, this case involves the confluence of two coercive factors that have been limited by the Constitution in other contexts. It would be most in keeping with the due process limitations set forth in *Pearce, Jackson,* and *Corbitt* to restrict the participation of courts in plea-bargaining in capital cases. Whether those restrictions took the form of an absolute prohibition or a requirement that the reasons for the imposition of the death sentence despite the earlier offer of life appear on the record, Hitchcock would have stated a claim.

**B. State court factfinding**

Before the trial judge sentenced Hitchcock, his attorney made a statement to the court on his behalf. At one point during the remarks, the attorney referred to the court's involvement in an earlier plea negotiation:

> MR. TABSCOTT: I would also remind the Court that prior to trial, the Court did agree to a plea of nolo contendere giving the defendant a life sentence upon that plea. I have nothing further.
>
> THE COURT: I think the record ought to show that the matters we discussed, there was never any understanding, because your client didn't want to consider any plea.

---

ant. The due process clause should come into play in cases posing the greatest risk of coer-

cion, including those cases where judicial involvement is greatest.

MR. TABSCOTT: That plea was offered to him by the State and the Court, however. And, it is true he declined to enter that plea.

This is the entire factual record before this court relating to Hitchcock's claim. When this claim was pressed before the Florida Supreme Court, the record also contained an affidavit completed by Tabscott at the time of the plea offer, stating that "Judge Paul indicated that he would accept a plea of nolo contendere as charged and that the Appellant would be sentenced to life imprisonment." The prosecutor completed an affidavit three years after the sentencing that contradicted Tabscott's version: "Judge Paul indicated that he would consider [the State's] recommendation, should the ... defendant actually plead guilty as charged."

The Florida Supreme Court ultimately rejected Hitchcock's claim by making a factual finding. It stated that "the judge agreed only to consider such an agreement if Hitchcock were to plead guilty.... There is nothing in the record even hinting that the trial court imposed the death penalty because Hitchcock chose to have a jury trial." 413 So.2d at 746.

The warden now contends that this is a factual finding entitled to the presumption of correctness of 28 U.S.C.A. § 2254(d). Of course, the statement that "the judge agreed only to consider such an agreement if Hitchcock were to plead guilty" can only be construed as finding of historical fact, not a legal conclusion. But the Florida Supreme Court reached its findings by reviewing conflicting affidavits and ambiguous statements in the trial transcript. It did not remand for an evidentiary hearing despite the availability of the affiants. Moreover, the finding reached by the court relied exclusively on the affidavit completed years after the event and ignored the affidavit created at the time of the plea offer. The court also made a logical jump from the trial court's statement that "there was no understanding" to the conclusion that the trial court never had to "consider" the offer. The trial court's statement could also have meant that it considered an offer and extended the offer, which was then rejected by the defendant.

Under these circumstances, the Florida Supreme Court cannot be said to have reached its findings of fact after a full and fair hearing, 28 U.S.C.A. § 2254(d)(2), and the finding was not supported by the record as a whole, 28 U.S.C.A. § 2254(d)(8). Thus, the statutory presumption of correctness does not apply. The district court should be ordered to hold an evidentiary hearing to resolve the conflict in the existing record and determine whether the trial court attempted to induce Hitchcock to plead guilty by threatening him with an increased chance of receiving the death penalty if he went to trial. I therefore dissent from the majority's holding that denies relief to Hitchcock before the facts relevant to his adequate legal claim have been developed.