This is an appeal from the denial of a petition for post-conviction relief challenging the appellant's conviction for capital murder.
In December 1983, Ku Klux Klansman Henry F. Hays, the appellant, was convicted of the capital murder of Michael Donald. He was sentenced to death in February 1984. The Alabama Court of Criminal Appeals affirmed that conviction on direct appeal but reversed his sentence of death, holding that the jury's sentencing verdict of life imprisonment without parole was binding on the trial court. Hays v. State, 518 So.2d 749
(Ala.Cr.App. 1985). The Alabama Supreme Court affirmed this Court's affirmance of the appellant's conviction but ordered that the sentence of death be reinstated. Ex parte Hays,518 So.2d 768 (Ala. 1986). The United States Supreme Court declined to hear the appellant's case. Hays v. Alabama, 485 U.S. 929,108 S.Ct. 1099, 99 L.Ed.2d 262 (1988).
In May 1988, the appellant filed a petition for post-conviction relief in the Circuit Court of Mobile County, Alabama. After a number of hearings at which both argument and evidence were presented and at which the appellant was represented by counsel, the circuit court, in March 1991, denied the petition and entered written findings of fact. This appeal is from that denial.
 I.
The appellant argues that the prosecution's key witness, James L. "Tiger" Knowles, committed perjury in the appellant's trial. He contends that the circuit court failed to apply the principles of Ex parte Frazier, 562 So.2d 560 (Ala. 1989). We disagree.
In Frazier, the Alabama Supreme Court announced a new standard for reviewing motions for new trial alleging perjured testimony.
 "[T]he following standard should be used in death penalty cases: In order to grant a motion for a new trial alleging perjured testimony, the trial court must be reasonably well satisfied 1) that testimony given by a witness at trial was false; 2) that there is a significant chance that had the *Page 1232 
jury heard the truth, it would have reached a different result; and 3) that the movant is not relying on evidence of which he was aware at trial and which he consciously decided not to use to challenge the testimony of the perjured witness.
 ". . . [A] presumption of correctness will continue to be indulged in favor of the trial court's factual findings, and the trial court's ruling on the motion will be upheld on appeal unless it is clearly erroneous."
Ex parte Frazier, 562 So.2d at 570. Under this test, the accused no longer has to prove that the State had knowledge of the perjured testimony.
Since a petition for post-conviction relief may serve the same purpose as a motion for new trial on the ground of newly discovered evidence, Groce v. State, 48 Ala. App. 709, 710-11,267 So.2d 499, 501 (1972) (the writ of error coram nobis "serves as a motion for a new trial on the ground of newly discovered evidence"), this same standard should be applied to a petition for post-conviction relief alleging that a conviction was based on perjured testimony. See Ex parteLockett, 548 So.2d 1045, 1047 (Ala. 1989) ("cases dealing with the writ of error coram nobis may be used in interpreting Rule 20," A.R.Crim.P.Temp.).
At one of the hearings on the post-conviction petition, Knowles, the appellant's accomplice and the prosecution's chief witness against the appellant at his trial, admitted that he had perjured himself in his various and numerous accounts of the murder of Michael Donald which he had given both before and after the trial of the appellant. At an evidentiary hearing held on June 22, 1989, Knowles testified that he had told a number of different stories about the killing of Michael Donald and the surrounding events; that he had committed perjury with respect to that event; that he had lied to grand juries, to federal and state law enforcement officers; and that he had lied in the "original Hays case." RR. 187-188[1]. He testified that he "lied to make the crime not look as bad as it was," RR. 190, and that "[a]t times," he had testified so as to make others look more guilty and himself less guilty. RR. 191.
However, at that same hearing, Knowles maintained that he had not lied about the appellant's participation in the murder.
 "Q. [By the Mobile County District Attorney:] All right. And though you have lied, have you ever waivered to the very best of your knowledge on the fundamental proposition that Henry Hays participated in the murder of Michael Donald with you?
"A. [Knowles:] No." RR. 216.
 "Q. Did the lies that you told at the Henry Hays trial relate to the involvement of Henry Hays in the murder of Michael Donald?
"A. No.
 "Q. And just so the record [will] be explicit, you've testified as to how he participated?
"A. Yes.
 "Q. And, again, on Friday night, March 20th, 1981, did you and Henry Hays have any intent other than to, quote, kill a nigger?
"A. No.
 "Q. And did Henry Hays participate in the manner that you've testified in the death of Michael Donald, the murder of Michael Donald?
"A. Yes." RR. 222.
Also at that evidentiary hearing, Knowles testified that Michael Donald and the appellant were fighting and that "Henry was cutting at Michael with a razor knife, a utility knife rather. After Donald was killed and we put him in the trunk and Henry cut his throat." RR. 217-18. Knowles stated that he and the appellant in "combination" put a noose around Donald's neck while he was still alive and that both of them "pulled and tightened" that noose around the neck of Donald. RR. 218. *Page 1233 
The appellant argues that Knowles' inconsistent statements and admitted perjury demonstrate his "inherent lack of credibility" (Appellant's brief at 17) and that Knowles is a "pathological liar" (Appellant's brief at 10). The appellant specifically alleges that Knowles lied about the reason a cross was burned on the grounds of the Mobile Courthouse on the night of the murder, and about whether Matthew Jones knew that Knowles had "borrowed" Jones' pistol. Other than these references, the appellant has failed to state exactly what facts Knowles lied about at his trial.
We have examined the transcript of the appellant's trial. Defense counsel cross-examined Knowles about various statements he had given to federal and state law enforcement officers. Throughout this cross-examination, Knowles admitted that he had initially denied any knowledge of or participation in the murder, that he did not tell the truth, that he was "inconsistent in a lot of matters," that he had on occasion answered only some questions truthfully, and that he had failed to disclose some information until recently before trial. On cross-examination, defense counsel expertly portrayed Knowles as a young but ruthless and amoral opportunist who told the truth only when it appeared to be in his best interests to do so.
We note that the trial court charged the jury that "if you believe that a witness has deliberately sworn falsely as to a material fact you may, if you wish, disregard that witness' entire testimony." O.R. 794-95.[2]
The appellant's argument would be convincing had Knowles been the only witness to incriminate the appellant. However, our review of the record of the appellant's trial convinces this court beyond any doubt that the testimony of accomplice Knowles was corroborated by substantial independent evidence connecting the appellant to the murder and kidnapping, including the testimony of three other witnesses that the appellant had admitted his participation.[3] Furthermore, the most significant evidence about the cross-burning and how the pistol was obtained came not from Knowles, but from other witnesses.
Applying the rule of Frazier, this Court finds that the appellant has failed to show that the testimony given by Knowles at the appellant's trial concerning the appellant's participation in the murder was false and perjured. On a petition for post-conviction relief, "[t]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle him to relief." Rule 20.3, A.R.Crim.P.Temp. (now Rule 32.3, A.R.Crim.P.). Furthermore, applying not only the literal rule of Frazier, but also the spirit and intent of that case, this court is absolutely convinced that there is no significant chance that, had the jury heard the impeaching evidence, it would have reached a different result. This court is convinced that Knowles' testimony, if given today, would be as damning as it was when given in 1983. "A judgment of acquittal 'is not required because the government's case includes testimony by "an array of scoundrels, liars and brigands." ' United Statesv. Hewitt, 663 F.2d 1381, 1385 (11th Cir. 1981), quoting UnitedStates v. Tiche, 424 F. Supp. 996, 1000-01 (W.D.Pa.), aff'dmem., 564 F.2d 90 (3d Cir. 1977)." United States v. Rivera,775 F.2d 1559, 1561 (11th Cir. 1985), cert. denied, 475 U.S. 1051,106 S.Ct. 1275, 89 L.Ed.2d 582 (1986).
In his finding of facts, the trial judge found:
 "This Court is satisfied beyond all reasonable doubt that petitioner had a fair trial and that the jury reached the only logical and reasonable conclusion: that the petitioner is guilty of the capital offense to the exclusion of any reasonable *Page 1234 
probability of his innocence. The petitioner was represented by one of Mobile's preeminent defense attorneys with years of experience, and who handled the case so well that twelve jurors were persuaded that in spite of this heinous and despicable crime the petitioner should not be put to death.
 "This Court is also convinced beyond all possible doubt that regardless of who defended the petitioner or their access to all the evidence now before the Court the result would have been the same." R. 384.
 "The allegations of petitioner regarding ineffective assistance of counsel are without merit. As noted earlier, one might always question the merit of pursuing a particular defense or strategy once it has failed. There is, however, nothing to suggest that the result would have been otherwise. Trial counsel for petitioner was a noted local defense attorney with considerable trial experience and success. His examination and cross-examination clearly suggest that he had a great deal of familiarity with the facts and his own strategy with regard to the defense of the case." R. 386.
Those findings are supported by the record.
 II.
The appellant complains about the prosecution's alleged failure to disclose to the defense statements made by Knowles which would have been "extremely valuable" in impeaching Knowles. Appellant's brief at 24. The appellant also alleges that the "prosecutor's misrepresentations completely misled defense counsel as to the existence of prior inconsistent statements." Appellant's brief at 27.
The appellant has argued that
 "in many of [the statements] Knowles denied any knowledge whatsoever of the offense. (See St. 1, 2, 4, 5 and 6.) In many others, he indicates that there was no intent to kill Michael Donald at the time he was kidnapped, rather there was only an intent to 'hassle' or 'aggravate' him. (See St. 8, 9, 10, 14, 15, 17 and 18.) Further, several of the statements contain no mention whatsoever as to the use of a gun in the abduction of Michael Donald. Those statements indicate that the abduction was accomplished through deception: Knowles asked Donald into the car to show them directions to a nightclub. (See St. 14 and 15.) Finally, in one of the statements, Knowles admits that he was the only person who made a threat to kill Michael Donald. (See St. 17.)" R. 96-97.
A review of defense counsel's cross-examination of Knowles at the appellant's trial reveals that that examination covered Knowles' statements denying any knowledge of the murder and those statements in which the pistol was not mentioned. Knowles was also questioned about his intent in abducting the victim.
Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97,10 L.Ed.2d 215 (1963), dictates that an accused's right to due process is violated when the prosecution withholds material evidence that is favorable to the defense. We find no violation of that rule.
With regard to this issue, in his finding of facts, the circuit judge found:
 "The petitioner alleges that the State failed to produce a number of statements made by James L. Knowles, Jr., which deprived him of a fair trial. Certainly the State was obligated under the law and orders of this Court to produce all of the statements which it had. Problems arose, however, in that the Federal Bureau of Investigation apparently had a number of these in its possession which were not in the possession of the District Attorney. There is no evidence and this Court has no reason to believe that the State either failed or neglected to produce all statements which it had in its possession or of which it was aware." R. 384.
Those findings are supported by the record. In connection with this issue, it must be noted that the murder of Michael Donald was investigated and prosecuted by both the state and federal government and that the investigations continued after the conviction *Page 1235 
of this appellant. The appellant was convicted in 1983. Knowles pleaded guilty in 1985. Benjamin Cox was first tried in 1985. Cox was tried a second time in 1989 along with Benny J. Hays.
This case was pending before the circuit court on the post-conviction petition for nearly three years. The appellant was afforded aggressive and energetic representation by his three attorneys throughout that period. It appears that the appellant was given access to every document relating to Knowles that was in the prosecutor's file at the time of those post-conviction proceedings. However, as noted by the Attorney General, there was no proof as to how many statements the prosecutor had at the time of trial or as to how many and which statements the prosecutor made available to the defense. Appellee's brief at 44-45.
The evidence does show that the prosecutor did make statements made by Knowles available to the defense and that those statements were used by defense counsel in cross-examining Knowles. The evidence does not show that the prosecution had statements by Knowles at the time of or during the trial which it did not make available to the defense.
 " 'If the accused has any hope of putting a trial court in error for refusing to permit discovery of evidence in the hands of the prosecution, he must . . . have made a showing that it is in the possession of the prosecution.' [C. Gamble, McElroy's Alabama Evidence, § 290.05(1) (3d ed. 1977)] and cases cited therein. See United States v. Walker, 720 F.2d 1527 (11th Cir. 1983), cert. denied, Gustin v. United States, 465 U.S. 1108, 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984) ('Brady does require that the information requested be known to the prosecution.' Walker, supra, p. 1535). Perry v. State, 371 So.2d 969 (Ala.Cr.App.), writ denied, Ex parte Perry, 371 So.2d 971
(Ala. 1979)."
Frazier v. State, 528 So.2d 1144, 1150 (Ala.Cr.App. 1986). "[A] party cannot produce what it doesn't have." United States v.Cannington, 729 F.2d 702, 712 (11th Cir. 1984). Here, there was no showing that the additional statements were either in the possession of the prosecution or that the prosecutor had knowledge of the existence of those statements. See UnitedStates v. Bryan, 868 F.2d 1032, 1037 (9th Cir.), cert. denied,493 U.S. 858, 110 S.Ct. 167, 107 L.Ed.2d 124 (1989) ("If a federal prosecutor has knowledge of and access to exculpatory information as defined in Brady and its progeny that is outside the district, then the prosecutor must disclose it to the defense."). See also United States v. Paternina-Vergara,749 F.2d 993, 997 (2d Cir. 1984), cert. denied, Carter v.United States, 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985) (federal prosecutor not required to disclose information in possession of state prosecution, "at least in the absence of a joint federal-state investigation").
 III.
The appellant argues that the circuit court erred by failing to consider evidence establishing the prosecution's "bad faith" and "deceit" which resulted in the commencement of trial less than 24 hours after indictment.
The substance of this issue was addressed on original submission by this Court. Hays, 518 So.2d at 752-60. A majority of this Court found no error because the appellant had been unable to demonstrate prejudice by the trial court's denial of the requested continuance. Two judges dissented. Hays,518 So.2d at 765-66 (Bowen, P.J., dissenting; McMillan, J., concurring in that dissent). The Alabama Supreme Court affirmed this Court on that issue. Ex parte Hays, 518 So.2d at 771-73, with two judges agreeing with the dissenters from this Court.Hays, 518 So.2d at 778 (Almon, J., dissenting; Beatty, J., concurring in the dissent).
We have searched the record presented to this Court on this appeal and have found no additional evidence which would tend to show "bad faith" or "deceit" other than that argued on the direct appeal of the appellant's conviction. In denying the petition, the circuit court found in this regard: *Page 1236 
 "The contentions of the petitioner with respect to the proximity between the time of indictment and the time of trial as well as the enhancement of punishment and the disparity thereof with respect to accomplices has been previously addressed by the appellate Courts in the direct appeal of this case." R. 385-86.
Relief under this issue is precluded by Rule 20.2(4), A.R.Crim.P.Temp. (now Rule 32.2(a)(4), A.R.Crim.P.), which provides: "A petitioner will not be given relief under this rule based upon any ground . . . [w]hich was raised or addressed on appeal. . . ."
 IV.
The appellant argues that the circuit court, in denying the petition, erroneously held that the Court of Criminal Appeals and the Supreme Court of Alabama had considered the proportionality of the appellant's sentence with that received by his accomplice.
This Court initially set aside the appellant's sentence to death without making any proportionality determination.Hays, 518 So.2d at 764-65. The Alabama Supreme Court ordered that the sentence to death be reinstated. On rehearing, that Court wrote:
 "The United States Constitution does not require the State's highest court to review the propriety of the death sentence in every case in which the sentence is given. Pulley v. Harris, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). However, in the interest of justice, we extend our opinion in order to examine both the propriety and the proportionality of the death sentence given in this case."
Hays, 518 So.2d at 780. The Alabama Supreme Court concluded: "We cannot conceive of an instance in which the sentence of death could be more proportionate to the nature of the criminal act than in the case before us." Hays, 518 So.2d at 780.
It is true that the Alabama Supreme Court did not specifically state that it had considered the proportionality of the appellant's sentence in light of the sentences received by his accomplices. However, we find that there is a rational basis for the differences in those sentences and conclude that the appellant's sentence was not unconstitutionality disproportionate when compared with the sentence received by accomplice Knowles.
In 1985, Knowles pleaded guilty in United States District Court to depriving Michael Donald of his civil rights and was sentenced to life imprisonment. We note that Benjamin Franklin Cox was convicted of the murder of Michael Donald and was sentenced to 99 years' imprisonment in 1985. Cox v. State,585 So.2d 182 (Ala.Cr.App. 1991). Benny J. Hays was acquitted.
While Knowles may have been the "instigator" of the Michael Donald killing, as the appellant alleges, Appellant's brief at 36, the appellant was unquestionably the other "trigger man." However, as noted by the Attorney General, Knowles and the appellant are not in the same situation for three reasons.
First, although he was the appellant's ranking officer in the Klu Klux Klan, Knowles was 16 years old at the time of the murder. The appellant was 26. Age may be a mitigating circumstance under Ala. Code 1975, § 13A-5-51(7). Only after the appellant's conviction was it settled that the execution of a person who was 16 years old at the time of the commission of the crime would not constitute a violation of theEighth Amendment. Stanford v. Kentucky, 492 U.S. 361, 109 S.Ct. 2969,106 L.Ed.2d 306 (1989). Compare Thompson v. Oklahoma,487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988), in which four members of the court concluded that the Eighth Amendment prohibits the execution of a person who was under the age of 16 at the time of the murder.
Second, Knowles pleaded guilty. "It is well-settled that the State may favor with clemency a person who confesses his guilt." Brooks v. Estelle, 697 F.2d 586, 588 (5th Cir. 1982). "A defendant who pleads guilty . . . is in a markedly different posture from a defendant who is convicted at trial." Hitchcockv. Wainwright, 770 F.2d 1514, 1519 (11th Cir. 1985), reversed on *Page 1237 
other grounds, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347
(1987).
Third, Knowles cooperated with both the federal and state governments in the investigation and prosecution. "[T]he practice of taking into consideration, in sentencing an accomplice, his aid to the state in turning state's evidence can be no denial of due process to a convicted confederate."Lisenba v. California, 314 U.S. 219, 227, 62 S.Ct. 280, 285,86 L.Ed. 166 (1942). See also Palmes v. Wainwright, 725 F.2d 1511,1524 (11th Cir.), cert. denied, 469 U.S. 873, 105 S.Ct. 227,83 L.Ed.2d 156 (1984); Smith v. Wainwright, 741 F.2d 1248, 1259
(11th Cir. 1984) (contention that accomplice's sentence of 25 years' imprisonment pursuant to plea bargain rendered defendant's sentence to death disproportionate "lacks merit"), cert. denied, 470 U.S. 1087, 105 S.Ct. 1853, 85 L.Ed.2d 150
(1985).
Furthermore, as best this Court can determine, Knowles had not yet been sentenced when the appellant was sentenced. "[T]o exact review of a prior sentence each time another person involved in the same crime or a person involved in another similar crime is sentenced would require literally endless review unless the state ceased to prosecute and obtain convictions in capital cases. The constitution does not require retrospective review of a sentence imposed four years earlier."Brooks, 697 F.2d at 588. See also Wright v. State,494 So.2d 726, 739 (Ala.Cr.App. 1985), affirmed, 494 So.2d 745 (Ala. 1986), cert. denied, 479 U.S. 1101, 107 S.Ct. 1331,94 L.Ed.2d 183 (1987).
This Court echoes the finding of the Alabama Supreme Court: "We cannot conceive of an instance in which the sentence of death could be more proportionate to the nature of the criminal act than in the case before us." Hays, 518 So.2d at 780.
 V.
The appellant argues that the sentencing judge violated his rights under the Sixth and Fourteenth Amendments by relying on two uncharged criminal offenses as aggravating circumstances without giving him prior notice. The victims of these two offenses testified at the appellant's sentencing hearing before the trial judge.
In his order sentencing the appellant to death, the trial judge wrote:
 "The Court first considers the aggravating circumstances as outlined and described in Section 13A-5-35 of the Code of Alabama 1975 (effective January 1, 1980).
". . . .
 "(2) The Court finds that the defendant was not previously convicted of another capital felony or a felony involving the use or threat of violence to the person; however, the Court does find from the evidence beyond a reasonable doubt that in September, 1980, the defendant committed an assault upon the person of Alvin Smith, and that charges in that case were dropped because of threats made to the wife of the victim. The Court also finds from the evidence beyond a reasonable doubt that in March, 1981, shortly before the capital offense was committed in this case, the defendant, Henry F. Hays, and James 'Tiger' Knowles, took Kenneth Jones to the very area where the capital offense in the instant case was committed, and proceeded to assault said individual. . . ." O.R. 156.
In considering the statutory mitigating circumstances listed in former Ala. Code 1975, § 13A-5-36, the trial judge found:
 "(1) Based upon the evidence, the Court cannot say that the defendant has no significant history of prior criminal activity; hence this is not a mitigating circumstance." O.R. 158.
It appears undisputed that the underlined portion of the judge's sentencing order set out above was misplaced in the aggravating circumstances section of that order and should have been placed under the trial judge's finding that the mitigating circumstance of no significant history of criminal activity did not apply in this case.
Relief under this argument of the appellant is precluded under Rule 20.2(a)(3) because it could have been raised at trial and under Rule 20.2(a)(5) because it could have been raised on direct appeal. *Page 1238 
 VI.
The appellant argues that the evidence at the post-conviction proceedings proved that the murder of Michael Donald was not premeditated or planned. This argument blindly ignores the evidence presented at those proceedings.
The issue of the sufficiency of the evidence was raised at trial and on appeal. Hays v. State, 518 So.2d at 760. Therefore, this issue is precluded. Rule 20.2(a)(2), (4), A.R.Cr.P.Temp.; Gibson v. State, 580 So.2d 38, 41 (Ala.Cr.App. 1990).
Furthermore, the fact that this murder was unskillfully and haphazardly conceived does not exclude the fact that it was premeditated and deliberate. Despite the indiscriminate manner in which the victim was selected and despite the fact that the crime was hatched in the ignorance of racial prejudice, there is no doubt that the murder of Michael Donald was intentionally planned and deliberately executed.
 "Premeditation and deliberation in the law of homicide are synonymous terms meaning simply that the accused, before he committed the fatal act, intended that he would commit the act at the time that he did and that death would result. It does not mean that the accused 'must have sat down and reflected over it or thought over it for any appreciable length of time.' White v. State, 236 Ala. 124, 125, 181 So. 109 (1938).
 "Premeditation and deliberation may be formed while the killer is 'pressing the trigger that fired the fatal shot.' Caldwell v. State, 203 Ala. 412, 417, 84 So. 272 (1919); Daughdrill v. State, 113 Ala. 7, 32, 21 So. 378 (1897). There need be no 'appreciable space of time between the formation of the intention to kill and the act of killing.' Miller v. State, 54 Ala. 155 (1875). Such space of time is 'immaterial.' 'It was possible for the defendant to have framed a premeditated as well as a malicious design to kill after taking up the gun and before it was fired.' Dixon v. State, 128 Ala. 54, 58, 29 So. 623 (1901).
 "The existence of premeditation and deliberation must be determined from the particular facts and individual circumstances of each case.
 "The formation of an intent to kill involved in premeditation and deliberation may be inferred from the character and extent of the wounds to the deceased."
Young v. State, 428 So.2d 155, 158 (Ala.Cr.App. 1982). In this case we have no doubt that the killing was premeditated and deliberate. Certainly, the fact that the appellant cut Donald's neck with a knife in order to make sure he was dead is a convincing indication that the appellant actually possessed the intent to kill.
Our review convinces this Court that the appellant received a fair trial and that his sentence of death is appropriate. The judgment of the circuit court denying the petition for post-conviction relief is affirmed.
AFFIRMED.
All Judges concur.
[1] The reference "RR." refers to the court reporter's transcript on this appeal of the denial of the petition for post-conviction relief. In that record, the court reporter has designated the pages as either "R" or "RR."
[2] The reference "O.R." refers to the appellate record of the appellant's original trial.
[3] At the appellant's trial, the appellant's former wife testified that the appellant admitted his participation in the hanging to fellow Klansman Sam Krause in August of 1982 (R. 545), Klansman Arthur Frank Roberts testified that the appellant admitted his participation in what happened on Herndon Avenue around Thanksgiving or Christmas of 1982 (R. 600-01), and William O'Connor testified that the appellant admitted responsibility for the hanging six or seven months before trial (R. 605-06).